UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRELL SIGGERS,

        Plaintiff,

                              CASE NO. 07-CV-12495-DT
                              JUDGE MARIANNE O. BATTANI
                              MAGISTRATE JUDGE PAUL J. KOMIVES

    v.

ELLEN M. CAMPBELL,
PATRICIA L. CARUSO,
ANDREW J. JACKSON and
NORMAN MINTON,

        Defendants.

_____/

# REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTION TO DISMISS BASED ON FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES AND FAILURE TO STATE A CLAIM (Doc. Ent. 22)

Table of Contents

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.    Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.    The Instant Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    C.    Pending Motions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    D.    Summary Judgment Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    E.    Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
         1.    Plaintiff has received eight (8) notices of package/mail rejection and two (2) major misconduct tickets. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
         2.    At least two grievances relate to the facts underlying plaintiff's complaint. . . . . . . . . . . . . . . . 16
         3.    Plaintiff's complaint is based primarily on the First and Fourteenth Amendments. . . . . . . . . . . 18
         4.    The parties dispute whether all of plaintiff's claims have been exhausted. . . . . . . . . . . . . . . . . 20
         5.    The First and Fourteenth Amendment claims against Campbell related to the September 12, 2006 notice of package/mail rejection; against Minton related to the issuance of the March 26, 2007 misconduct and against Campbell and Minton alleging conspiracy related to the March 26, 2007 misconduct have been exhausted. However, the bases of these claims are somewhat unclear. . . 23
         6.    Plaintiff's claim against Caruso is unexhausted. Plaintiff's claim against Jackson related to the September 12, 2006 notice of package/mail rejection is exhausted; however, it does not allege the requisite personal involvement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

I.   **RECOMMENDATION:** The Court should grant in part and deny in part defendants' motion to dismiss based on failure to exhaust administrative remedies and failure to state a claim. Doc. Ent. 22. The First and Fourteenth Amendment claims against Campbell related to the September 12, 2006 notice of package/mail rejection; the claims against Minton related to the issuance of the March 26, 2007 misconduct and against Campbell and Minton alleging conspiracy related to the March 26, 2007 misconduct have been exhausted. However, the bases of these claims are somewhat unclear. The Court should therefore permit plaintiff to amend his complaint to clarify the basis of his First and Fourteenth Amendment allegations with respect to the aforementioned, exhausted claims.

However, plaintiff's claim against Caruso is unexhausted and, while plaintiff's claim against Jackson related to the September 12, 2006 notice of package/mail rejection is exhausted, it does not allege the requisite personal involvement.

II.   **REPORT:**

A.   **Background**

1.     On August 6, 1984, Darrell A. Siggers was sentenced for the February 16, 1984 violations of weapons - felony firearms (Mich. Comp. Laws § 750.227BA) and first degree murder (Mich. Comp. Laws § 750.316). He is serving a life sentence. *See* www.michigan.gov/corrections, "Offender Search."

On March 10, 1994, plaintiff filed a pro se application for leave to appeal the Recorder's Court's February 9, 1994 order. On September 1, 1994, the Michigan Court of Appeals denied the application. On October 28, 1994, the Michigan Court of Appeals denied the motion for reconsideration. Case No. 173551. The Supreme Court of Michigan denied leave to appeal. *People*

*v. Siggers*, No. 101319, 449 Mich. 895, 536 N.W.2d 776 (July 18, 1995). The Supreme Court of Michigan denied reconsideration. *People v. Siggers*, No. 101319, 539 N.W.2d 513 (Oct. 31, 1995).

On November 2, 2004, the Wayne County Circuit Court denied plaintiff's motion for relief from judgment. Case No. 84-001567. On November 1, 2005, Siggers, through attorney F. Martin Tieber, filed a delayed application for leave. On May 17, 2006, the Michigan Court of Appeals denied the delayed application for leave to appeal. Case No. 266307. The Michigan Supreme Court denied the application for leave to appeal. *People v. Siggers*, No. 131604, 477 Mich. 1003, 726 N.W.2d 33 (Jan. 29, 2007).

**2.**     Plaintiff filed a petition for writ of habeas corpus in this Court on May 6, 1996. On August 30, 1996, Judge Hood entered judgment dismissing without prejudice petitioner's petition. *Siggers v. Stegall*, Case No. 2:96-CV-72109.

**3.**     On July 24, 2001, plaintiff filed a prisoner civil rights case in this Court against defendant David Barlow. *Siggers v. Barlow*, Case No. 2:01-CV-72729. According to the November 15, 2005 joint final pretrial order, plaintiff brought "a claim of First Amendment retaliation pursuant to 42 U.S.C. § 1983, charging the defendant with retaliatory transfer, interference with access to counsel, intimidation, and other intentional harms in response to the plaintiff having complained to supervisory officials about the defendant's conduct." Doc. Ent. 66 at 1. Defendant is identified as the RUM (Resident Unit Manager), apparently at Mount Correctional Facility (NRF). Doc. Ent. 66 at 1-2, 7 ¶ 39. It appears that the facts underlying this complaint took place during 2000 and 2001. Doc. Ent. 66 at 1-2. On September 12, 2003, Judge Tarnow entered an order denying defendant's motion for summary judgment. Doc. Ent. 42. On June 24, 2005, the Sixth Circuit affirmed his decision. *Siggers-El v. Barlow*, 412 F.3d 693 (6th Cir. 2005).

On October 28 and November 10, 2005, the Court issued writs of habeas corpus ad testificandum to secure the presence of Darrell Siggers and Ross Maclin at trial. Doc. Entries 60-64. On November 16, 2005, a jury returned a verdict for plaintiff in the amount of $219,000 ($4,000 for actual damages, $15,000 for mental or emotional damages, and $200,000 for punitive and exemplary damages). Doc. Ent. 65. On December 30, 2005, Judge Tarnow entered judgment for plaintiff and against defendant in the amount of $219,000. Doc. Ent. 72. On April 10, 2006, Judge Tarnow entered an order denying defendant's motion for remittitur and/or new trial, granting plaintiff's motion for costs, and granting plaintiff's petition for attorney fees. *Siggers-El v. Barlow*, 433 F.Supp.2d 811 (E.D. Mich. 2006). On August 31, 2006, Judge Tarnow entered a stipulated order of dismissal with prejudice. Doc. Ent. 99.

**B.     The Instant Case**

Plaintiff is currently confined at Muskegon Correctional Facility (MCF). On June 11, 2007, while incarcerated at MCF, plaintiff filed this verified, pro se prisoner civil rights complaint against defendants Patricia L. Caruso, Andrew J. Jackson, Ellen M. Campbell, and Norman Minton. Doc. Ent. 1. Plaintiff's complaint is based upon his First Amendment rights to free speech, against retaliation, and of access to courts, as well as the Fair and Just Treatment Clause of the Michigan Constitution. Doc. Ent. 1 ¶¶ 47-51. He seeks declaratory, injunctive and monetary relief. Doc. Ent. 1 at 17-18. On July 9, 2007, plaintiff filed corrected copies of page twelve (12) of his complaint - namely the "relief requested" section. Doc. Ent. 4. The difference appears to be the addition of plaintiff's request for relief in the form of a new parole hearing and an award of $500, instead of $200, "for each day he was assigned to segregation[.]" Doc. Ent. 1 at 17 ¶ D; Doc. Ent. 4 at 2 ¶ D.

Judge Battani has referred this case to me for all pretrial matters. Doc. Ent. 6. On August

31, 2007, defendants filed a motion for enlargement of time in which to file a responsive pleading.

Doc. Ent. 8. My September 4, 2007 order, granted the motion and provided that defendants had up

to and including November 5, 2007 by which to file a responsive pleading. Doc. Ent. 9.

**C.     Pending Motions**

Currently before the Court are defendants October 17, 2007 motion to stay discovery

(Doc. Ent. 16), to which plaintiff has filed a response (Doc. Ent. 18), and defendants' December

7, 2007 motion to dismiss based on failure to exhaust administrative remedies and failure to state

a claim (Doc. Ent. 22), to which plaintiff has filed a response (Doc. Ent. 23).

Defendants' December 7, 2007 motion to dismiss based on failure to exhaust

administrative remedies and failure to state a claim advances four arguments:

> I.      Plaintiff filed one grievance, on 9/16/06, regarding mail rejections. This
> grievance fails to exhaust his claims concerning the mail rejections in
> 2005 and after 9/12/06, and properly exhausts only the 9/12/06 mail
> rejection claim against Defendant Campbell. . . .
>
> II.     Plaintiff's convictions on the two major misconduct tickets issued by
> Minton have not been overturned. [Therefore] Plaintiff's § 1983 claims
> against Minton regarding the two misconduct tickets [are] barred by the
> 'favorable termination' requirement of *Heck v Humphrey* and *Edwards v
> Balisok*[.]
>
> III.    [T]he allegations in the Complaint [are not] sufficient to state a conspiracy
> claim[.]
>
> IV.     Where a named defendant is a responder or reviewer of a prisoner
> grievance, or is being sued merely because of his or her supervisory
> position, [this] is [not] sufficient personal involvement to sustain a claim
> under 42 USC § 1983[.]

Doc. Ent. 22 at 5.

In addition to responding to these arguments, plaintiff's December 6, 2007, response asserts that defendants' dispositive motion does not comply with Fed. R. Civ. P. 12(b)(6), "as it presents matters outside the pleadings and therefore must be treated as one for summary judgment and disposed of as provided in Rule 56." Plaintiff additionally asserts that he is entitled to summary judgment against Jackson, "where defendant Jackson is procedurally barred from filing any defense in the above entitled matter, where he failed to timely respond to plaintiff's grievance, in violation of the grievance policy, which denied plaintiff due process." Doc. Ent. 23 at 2, 17.

**D.      Summary Judgment Standard**

Defendants bring their motion to dismiss pursuant to Fed. Rules Civ. P. 12(b)(1) and 12(b)(6) and 42 U.S.C. § 1997e(a). However, plaintiff argues that "[d]efendants['] motion to dismiss is in violation of Fed. R. Civ. Proc.12(b)(6), as it presents matters outside the pleadings and therefore must be treated as one for summary judgment and disposed of as provided in Rule 56[.]" Doc. Ent. 23 at 14.

Fed. R. Civ. P. 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12©, matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Plaintiff contends that consideration of defendants' second, third and fourth bases for dismissal (in other words the non-exhaustion arguments) will involve consideration of "matters outside the scope of Fed. R. Civ. P. 12(b)(6)[.]" Doc. Ent. 23 at 14.

Attached to defendants' motion are (1) a grievance inquiry printout (Doc. Ent. 22-3); (2) documents associated with grievance NRF-06-09-032-15A (Doc. Ent. 22-4, Doc. Ent. 22-5 at 10, 13), as well as documents concerning notices of package/mail rejection and a major misconduct hearing report (Doc. Ent. 22-5); (3) MDOC PD 03.02.130, effective 12/19/2003 (Doc. Ent. 22-6); (4) MDOC PD 03.03.105, effective 01/01/2007 (Doc. Ent. 22-7); (5) MDOC PD 03.03.105, effective 02/14/2005 (Doc. Ent. 22-8); and (6-8) three unpublished court opinions (Doc. Entries 22-9, 22-10, 22-11).

The Court should construe defendants' motion as one seeking summary judgment. Summary judgment, pursuant to Fed. R. Civ. P. 56, may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties.

*Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citing *Johnson v. Soulis,* 542 P.2d 867, 872 (Wyo. 1975) (quoting BLACK'S LAW DICTIONARY 881 (6th ed.1979)). "In evaluating a motion for summary judgment we view all evidence in the light most favorable to Plaintiff . . . and assess the proof to determine whether there is a genuine need for trial." *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1045 (6th Cir. 1998) (citations omitted).[1]

---

[1]The Sixth Circuit cited both *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) and *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) in support of this statement.

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986). The moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party discharges that burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine triable issue. Fed. R. Civ. P. 56(e); *Gregg*, 801 F.2d at 861.

"Although the nonmoving party 'may not rest upon the mere allegations or denials' of his pleading, Fed. R. Civ. P. 56(e), a verified complaint . . . satisfies the burden of the nonmovant to respond." *Thaddeus-X v. Blatter*, 175 F.3d 378, 385 (6th Cir. 1999).[2] "[A] verified complaint . . . would have the same force and effect as an affidavit and would give rise to genuine issues of material fact." *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992). However, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). *See also Hamilton v. Roberts*, No. 97-1696, 1998 WL 639158, *5 (6th Cir. Sept. 10, 1998) (unpublished) (personal knowledge required); *Daniel v. Cox*, No. 96-5283, 1997 WL 234615, *2 (6th Cir. May 6, 1997) (unpublished) (conclusory assertions are insufficient for purposes of surviving summary judgment); *Wiley v.*

---

[2]Plaintiff signed his complaint under penalty of perjury. *See* Doc. Ent. 1 at 16 ¶ 55; 25 U.S.C. § 1746 ("Unsworn declarations under penalty of perjury").

*United States*, 20 F.3d 222, 226 (6ᵗʰ Cir. 1994) (citing *Daily Press, Inc. v. United Press Int'l*, 412

F.2d 126, 133 (6ᵗʰ Cir. 1969)) (cannot consider hearsay evidence).

"Demonstration of simply 'metaphysical doubt as to the material facts' is insufficient."

*Kand Medical, Inc. v. Freund Medical Products, Inc.*, 963 F.2d 125, 127 (6ᵗʰ Cir. 1992), citing

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  As the

United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986),

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for

a jury to return a verdict for that party.  If the [non-movant's] evidence is merely colorable, or is

not significantly probative, summary judgment may be granted."  *Id.* at 246-250 (citations

omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co., Ltd. v. Zenith

Radio Corp.*, 475 U.S. 574, 586-587 (1986).  The standard for summary judgment mirrors the

standard for a directed verdict under Fed. R. Civ. P. 50(a).  *Anderson*, 477 U.S. at 250.

Consequently, a non-movant must produce evidence that would be sufficient to require

submission to the jury of the dispute over the fact.

**E.     Analysis**

**1.     Plaintiff has received eight (8) notices of package/mail rejection and two (2) major
     misconduct tickets.**

Plaintiff claims that, prior to his September 23, 2004, transfer to NRF, he "had been

receiving legal briefs and documents from friends in society and other prisoners."  Doc. Ent. 1 ¶

8.  He contends that soon after the Sixth Circuit's June 24, 2005 decision in his previous case,

Campbell "began rejecting legal briefs and documents sent to [him] from other prisoners and

friends in society."  Doc. Ent. 1 ¶ 10.

**Plaintiff received a notice of package/mail rejection from Campbell dated**

**September 6, 2005 regarding a 50-page application for leave to appeal for another**

**prisoner.** The mail had been sent by Carnell Bates (#180983) at Kinross Correctional Facility

(KCF). The notice was based on MDOC PD 04.07.112(M).[3]  Plaintiff requested a hearing, but

also noted that he wanted the mail sent at his expense to Professor Paul Reingold of the

University of Michigan Law School Clinical Law Program. Doc. Ent. 1 at 20; Doc. Ent. 22-5 at

1. Plaintiff wrote to Campbell on September 11, 2005, in which he mentioned an October 24,

2002 memo from Richard B. Stapleton to Wardens.[4]  Plaintiff requested that the brief be sent to

him or that the matter be set for hearing. The response notes that the PD on which plaintiff's

mail was rejected was effective November 15, 2004, and RUM Randall-Owens had been notified

that plaintiff wanted a hearing. Doc. Ent. 1 at 22; Doc. Ent. 22-5 at 3. Plaintiff claims that

"[a]fter the rejection was upheld at an administrative hearing, [he] was advised to submit the

question to the Warden's Forum for clarification[.]" Doc. Ent. ¶¶ 14.

----

[3]MDOC PD 04.07.112 governs prisoner personal property. Paragraphs M-Q concern personal property other than clothing. Paragraph M provides that "[p]risoners shall be permitted to possess legal property[,]" and it defines legal property. MDOC PD 04.07.112, effective November 15, 2004 (superceding the December 19, 2003 version). Legal property includes "[e]xample or sample pleadings that will assist in litigation." MDOC PD 04.07.112(M)(3)

[4]In part, the memo provided: "As a result of recent developments in the <u>Cain</u> case, clarification has been requested as to when a prisoner can receive through the mail motions, briefs, pleadings and similar legal documents in which another prisoner is identified as a party. Please advise mail room staff and other appropriate staff at your facility that such items fall within the definition of 'legal property' contained within PD 04.07.112 "Prisoner Personal Property". These documents, if received in the mail for a prisoner at your facility, cannot be rejected solely on the basis that another prisoner is identified as a party. Ths is true even if there is no authorized legal assistance agreement between the prisoners involved. There must be other clear proof that the documents violate Department policy."

The September 2005 Warden's Forum Agenda addressed the complaint that "[t]he mail room supervisor rejects legal briefs sent to prisoners from prisoners at other facilities citing violation of PD 04.07.112. This mail is being rejected solely because it is from another prisoner and not in compliance with Richard Stapleton's memorandum." Warden Jackson responded that he would "review the current policy guidelines with mail room staff to ensure our operations conform. This appears, upon closer review, to be a person issue which is in appropriate to be reviewed in this medium. Forum members misrepresenting personal issues in the future will be subjected to remedial action." Doc. Ent. 1 at 23-25; Doc. Ent. 22-5 at 4-6.

**Plaintiff received a second notice of package/mail rejection from Campbell dated October 10, 2005.** The mail had been sent by Titlow (#384878) of Southern Michigan Correctional Facility (JMF). The notice was based upon MDOC PD 04.07.112(M). Campbell noted that she had shown this to Warden Jackson. Plaintiff requested that the mail be sent back to Titlow at plaintiff's expense. Doc. Ent. 1 at 26.

**Plaintiff received a third notice of package/mail rejection from Campbell dated October 11, 2005.** The mail had been sent by Darrien Hayes (#230485) of JMF. The notice was based upon MDOC PD 04.07.112(M). Campbell noted, "Warden Jackson was shown this as well due to Titlow having another prisoner send mail in attempt to circumvent policy[.]" Plaintiff requested that the mail be sent back to Titlow at plaintiff's expense. Doc. Ent. 1 at 27.

On October 17, 2005, plaintiff wrote to Assistant Attorney General A. Peter Govorchin seeking clarification of Stapleton's October 24, 2002 memo. Doc. Ent. 22-5 at 9-10. Plaintiff also wrote to Konieczki, Bock, Stapleton, Lockhart and Jackson. Doc. Ent. 1 at 9 ¶ 18; Doc. Ent. 22-4 at 7. Plaintiff claims to have received only one response. Doc. Ent. 1 at 9 ¶ 18.

**Plaintiff received a fourth notice of package/mail rejection from Campbell dated October 24, 2005.** Campbell noted it was "12 pages [of] legal documents of prisoner Zavodsky sent in by Zavodsky's father (FOIA request & response retainer agreement, power of attorney & transaction document for investigation[)][.]"  The mail had been sent by Ford Motorsports.  The notice was based upon MDOC PD 04.07.112.  Plaintiff requested that it be returned to sender at plaintiff's expense.  Doc. Ent. 1 at 28.

On October 31, 2005, plaintiff "borrowed a postage metered envelop[e] from a fellow prisoner and wrote to Dr. Zavodsky, requesting that he contact . . . Govorchin personally to inquire whether he received Plaintiff's letter regarding . .. Campbell's conduct and to verify that the Stapelton memo was valid."  Doc. Ent. 1 at 10 ¶ 20.  According to plaintiff, "Campbell intercepted and opened Plaintiff's outgoing letter to Dr. Zavodsky and gave it to Defendant Minton."  Doc. Ent. 1 at 10 ¶ 21.  **On November 4, 2005, Minton wrote plaintiff a major misconduct ticket for an October 31, 2005 smuggling (045) and possession of forged documents; forgery (021).**  A hearing date was scheduled for November 8, 2005.  Doc. Ent. 1 at 29.  Plaintiff claims that Minton "handcuffed and took Plaintiff to segregation (the hole), where Plaintiff remained for 14 days[,]" - apparently from November 4th to November 18th.  Doc. Ent. 1 at 10 ¶ 22.  A hearing was conducted on November 18, 2005.  Hearing officer A. Baerwalde found that the charge of forgery had been established but did not find the charge of attempted smuggling to be established.  Plaintiff was given seven (7) days toplock.  Doc. Ent. 1 at 31, Doc. Ent. 22-5 at 7.  Plaintiff filed a request for rehearing, but it was denied.  Doc. Ent. 22 at 17 n.33.

**Plaintiff received a fifth notice of package/mail rejection from Campbell dated September 12, 2006 based upon MDOC PD 04.07.112(M).**  The mail was sent by Spencer, an

inmate at Marquette Branch Prison (MBP).  Campbell described the mail as "summons, respondent's appearance, respondent's motion to affirm, memorandum brief & motion for sanctions of another prisoner sent in by 3rd party[.]" Plaintiff requested that the mail be sent back to the sender at plaintiff's expense.  Doc. Ent. 1 at 32, Doc. Ent. 22-5 at 8.[5]

**Plaintiff received a sixth notice of package/mail rejection from Campbell dated September 15, 2006 based on MDOC PD 05.03.118(D)(3).**[6]  The mail was a self-addressed stamped envelope sent by Milton Robertson of Detroit, Michigan.  Doc. Ent. 1 at 33.  Plaintiff "spoke to Defendant Jackson regarding Defendant Campbell's conduct.  Defendant Jackson advised Plaintiff that he agreed with Defendant Campbell's position, but that Plaintiff should file a grievance and obtain clarification of the matter."  Doc. Ent. 1 at 1 ¶ 28.  On September 16, 2006, plaintiff completed a Step I grievance form (NRF-06-09-0932-15A), which is discussed in more detail below.

**Plaintiff received a seventh notice of package/mail rejection from Campbell dated September 29, 2006 based on MDOC PD 04.07.112(M).**  The mail was "116 pages

---

[5]Also on September 12, 2006, plaintiff "was personally interviewed by the parole board[.]" Doc. Ent. 23 at 8 n.1.

[6]MDOC PD 05.03.118 governs prisoner mail.  Paragraph D(3) provides that "[p]risoners shall be permitted to send and receive uncensored mail to or from any person or organization unless the mail violates this policy or Administrative Rule 791.6603. Mail shall not be prohibited solely because its content is religious, philosophical, political, social, sexual, unpopular or repugnant. However, mail shall be prohibited if it is a threat to the security, good order, or discipline of the facility, may facilitate or encourage criminal activity, or may interfere with the rehabilitation of the prisoner. This includes the following: . . . Mail containing physical contraband, which is defined as any property that a prisoner is not specifically authorized to possess or that is from an unauthorized source. This includes postage stamps, except that a prisoner may receive a single stamped self-addressed envelope from an attorney, a court or a legitimate religious organization."  MDOC PD 05.03.118 (effective 01/01/2006, superceding the 06/06/05 version).

[defendant's] motion sent 3rd party requesting assistance[.]" Campbell noted that the mail was

from David Scott of Brighton, Michigan and that Scott (#191939) was currently housed at JMF.

On or about October 5, 2006, plaintiff requested a hearing. Doc. Ent. 1 at 34. **Plaintiff received**

**an amended notice of package/mail rejection from Campbell dated October 5, 2006 based**

**on MDOC PD 04.07.112(M).** Campbell noted that there was an error on the notice "dated 9-29-

06 showing sender was prisoner at JMF when in fact, he has been paroled and item was not sent

in 3rd party[.]" Doc. Ent. 1 at 35.[7]

     **Plaintiff received an eighth notice of package/mail rejection from Campbell dated**

**March 9, 2007.** The mail was "7 pages - request for quote to provide a web site for a

business[,]" from Terrilyn Bolton of Detroit, Michigan. The notice was based on MDOC PD

05.03.118(D)(7).[8] It was also noted, "The Sender did not receive Rejection Notice." On or

about March 11, 2007, plaintiff requested that the mail be sent back to the sender at plaintiff's

expense. Doc. Ent. 1 at 45. On March 11, 2007, plaintiff spoke on the telephone with a female -

apparently about this mail. Plaintiff explained that he received the letter but not the pages. He

told her to mail the pages to "Cory's" lawyer when she got them back. Doc. Ent. 1 at 28-29.[9]

     According to plaintiff, the website information and other materials were re-mailed to him

on March 21, 2007, "bearing the return address of an attorney, who was deceased. Defendant

_____

    [7]On or about January 16, 2007, "the Parole Board issued a decision denying Plaintiff's request for a public hearing and consideration for clemency because of the misconduct tickets written by Defendant Minton." Doc. Ent. 23 at 8 n.1.

    [8]This subparagraph concerns "Mail for the purpose of operating a business enterprise from within the facility." MDOC PD 05.03.118(D)(7) (effective 01/01/2006).

    [9]Plaintiff provides the transcript cover sheets from Kory Smith's June 22, 2001 jury trial and July 16, 2001 sentencing in Wayne County Circuit Court at which Bertram L. Johnson was Smith's defense counsel. Doc. Ent. 23 at 30-31.

Campbell relayed the information to Defendant Minton." Doc. Ent. 1 at 12 ¶ 37. **On March 26, 2007, Minton wrote plaintiff a major misconduct report for March 21, 2007 smuggling.** A hearing was scheduled for March 29, 2007. Doc. Ent. 1 at 46. According to plaintiff, "Minton had Plaintiff cuffed and taken to the hole[.]" Doc. Ent. 1 at 12 ¶ 38. On April 3, 2007, hearing officer A. Baerwalde found plaintiff guilty and plaintiff received 30 days of detention, beginning April 3, 2007 and ending May 3, 2007. Doc. Ent. 1 at 47. Plaintiff filed a request for rehearing, but it was denied. Doc. Ent. 22 at 17 n.33. On April 8, 2007, plaintiff completed a Step I grievance form (NRF-07-04-0268-27a), which is discussed in further detail below.

On or about April 15, 2007, plaintiff "wrote Detroit Free Press writer Jeff Gerritt, attorney Jennifer Morris, and Reverend Joe Adams, informing them about being placed in the hole and the continuous harassment by . . . Campbell and Minton." Doc. Ent. 1 at 12 ¶ 41. On or about April 17, 2007, Reverend Adams visited plaintiff and "advised Plaintiff that he had attempted to visit Plaintiff previously, but was denied. Reverend Adams further advised Plaintiff that he was being harassed by staff officials and that Plaintiff's letters to him were opened and resealed[.]" Doc. Ent. 1 at 12-13 ¶ 42.[10] On or about April 20, 2007, plaintiff spoke with attorney Jennifer Morris, who advised him that "Plaintiff's letter to her had been opened and resealed[.]" Doc. Ent. 1 at 13 ¶ 43.[11] Plaintiff claims that on May 7, 2007, "Defendant Minton made a round in the hole and came to Plaintiff's cell and stated, 'You think you're a real smart ass don't you. Did you think I wouldn't find out about the letters you wrote? [Ain't] a damn

---

[10]Plaintiff refers to the affidavits of Adams and Zavodsky; however, these documents do not appear to be attached to plaintiff's June 11, 2007 48-page filing. Doc. Ent. 1 at 12-13 ¶ 42.

[11]Plaintiff refers to the affidavit of Morris; however, it does not appear to be attached to plaintiff's June 11, 2007 48-page filing. Doc. Ent. 1 at 13 ¶ 43.

thing none of them can do to me.  You keep writing people about me, you'll find yourself 500

miles away.'"  Doc. Ent. 1 at 13 ¶ 44.  Five (5) days later, on May 11, 2007, plaintiff was

transferred to MCF.  Doc. Ent. 1 at 13 ¶ 45.

At the time of the events underlying plaintiff's complaint, he was employed as an NRF

library clerk, President of the NRF NAACP branch, Chairman of the NRF Lifer Association

Legal Committee branch and "was aggressively pursuing clemency based on his actual

innocence with the strong support of highly respected public officials and community leaders[.]"

Doc. Ent. 1 at 13 ¶ 46.[12]

**2.      At least two grievances relate to the facts underlying plaintiff's complaint.**

**a.**      According to defendants, plaintiff has filed five (5) grievances at Step III.  Doc. Ent. 22-

3.  Only one of these grievances (NRF-2006-09-932-15a) was initiated after September 23, 2004

- the date on which the facts of the instant complaint begin.  Doc. Ent. 1 at 8 ¶ 8; Doc. Ent. 22-3.

The Step I grievance form was completed on September 16, 2006 and appears to have been

received on September 21, 2006.  The grievances alleges "retaliation for challenging the

rejection of [his] legal documents and exercising [his] right of Access to Court."  The grievance

also asserts violations of his "First and Fourteenth Amendment rights to Freedom of Speech,

Access to Courts, Due Process and Freedom from Staff abuse of Authority."

On October 13th, records supervisor Don Gouveia responded to the grievance.  He

concluded:

---

[12]Plaintiff refers to a November 8, 2004 Detroit Free Press article regarding his criminal case; however, it does not appear to be attached to his June 11, 2007 48-page filing.  Doc. Ent. 1 at 13 ¶ 46.

> [T]he documents in question in this grievance did not and do not meet the criteria
> of legal property that prisoners are permitted to possess as defined in PD
> 04.07.112, Section M, Paragraphs 1 through 11 and, therefore, were appropriately
> rejected by Ellen Campbell and NRF, and that the comments contained in the
> email memo of Richard B. Stapleton to Wardens (dated 10-24-2002) concerning
> "Prisoner Mail—Motions and Brief", which provided CLARIFICATION of the
> application of PD 04.07.112, Section M, are still current and valid but do not (and
> were not intended to) supersede PD 04.07.112, or justify overturning the mail
> rejection of these documents.

On October 16th, Warden Jackson reviewed the response.

Plaintiff completed a Step II grievance appeal form on October 24, 2006. Among other things, plaintiff asserted that the Step I response "further interferes with [his] right of Access To Court." It also alleges that "[r]espondent failed to address the unlawful retaliatory actions of clerk Campbell, in opening [his] outgoing mail, resulting in [him] being written a misconduct report and placed in segregation by Sgt. Minton." Pursuant to Grievance Coordinator Konieczki's November 8, 2006 grievance appeal receipt, the Step II appeal was received on October 24, 2006, and plaintiff was to be provided with a response no later than November 17, 2006. Jackson denied the grievance on December 18, 2006.

Plaintiff completed a Step III grievance appeal on or about November 24, 2006 - a date before the Step II grievance response:

> This appeal is filed because the Administrative Assistant at NRF (Warden
> Jackson) declined to respond to the Step II grievance appeal in the above entitled
> matter and stated that I should submit my Step III appeal to the Director's office. .
> . . I . . . hope you will provide the relief requested . . . as I believe my First and
> Fourteenth Amendment Constitutional rights have been and are continuing to be
> violated.

It was received at Step III on November 30, 2006. On or about April 21, 2007, plaintiff inquired about the status of his Step III appeal. On or about April 30, 2007, plaintiff was informed that the grievance had been received. It was denied on July 16, 2007, and the grievance was returned

on July 24, 2007.  Doc. Ent. 1 at 43-44, Doc. Ent. 22-3, 22-4, 22-5.  Plaintiff claims he received

the Step III grievance response on August 20, 2007.  Doc. Ent. 23 at 16.

**b.**      Plaintiff has also provided the Court with copies of NRF-07-04-0268-27a.  The grievance

form was dated April 8, 2007, and it states: "This complaint is filed on Ellen Campbell, NRF

mail room clerk and Lt. Minton, 6-2 shift, for conspiracy to deprive me of my civil rights by

submitting false smuggling misconduct report and failing to follow proper policy and

procedure."  It was received at Step I on April 12, 2007 and was rejected by Grievance

Coordinator B. Whitfield as non-grievable.  Doc. Ent. 23 at 22-23.

**3.      Plaintiff's complaint is based primarily on the First and Fourteenth Amendments.**

Plaintiff's complaint seeks relief for violation of his First and Fourteenth Amendment

rights for events which took place while he was incarcerated at NRF.  Doc. Ent. 1 ¶¶ 2-3.

Plaintiff characterizes his complaint as asserting conspiracy and First Amendment retaliation

claims.  Doc. Ent. 23 at 14.  He sues defendants Caruso, Jackson, Campbell and Minton in their

official and/or individual capacities for declaratory and injunctive relief and/or money damages.

Doc. Ent. 1 ¶¶ 4-7.[13]

---

[13]As the Supreme Court made clear in *Will v. Michigan Dep't of State Police*, 491 U.S. 58
(1989), Section 1983 "does not provide a federal forum for litigants who seek a remedy against a
State for alleged deprivations of civil liberties.  The Eleventh Amendment bars such suits unless the
State has waived its immunity, or unless Congress has exercised its undoubted power under § 5 of
the Fourteenth Amendment to override that immunity."  *Will*, 491 U.S. at 66 (internal citations
omitted).  The Eleventh Amendment bars suits against state officials sued in their official capacity.
*Will*, 491 U.S. at 71.  *See also*, *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Kentucky v. Graham*, 473
U.S. 159, 166-67 (1985).
      Here, the MDOC defendants are state officials, and plaintiff's claims against them in their
official capacities are therefore barred by the Eleventh Amendment.  However, plaintiff may seek
injunctive relief from a state official sued in his or her official capacity.  *Will*, *supra*, 491 U.S. at 71
n. 10.

Generally, plaintiff's claims are based upon his "right to Petition the Government for Redress of Grievances, Freedom of Speech, Access to Court, and Fair & Just Treatment [under] the First and Fourteenth Amendments to the U.S. Constitution and the Fair and Just Treatment Clause of the Michigan Constitution[.]" Doc. Ent. 1 ¶ 47. Specifically, plaintiff's access to court claim is based on "the right to receive legal pleadings through the mail from other prisoners for the purpose of perfecting an appeal, and assisting other prisoners, without being hampered and/or impeded by prison officials." Doc. Ent. 1 ¶ 48. Plaintiff's freedom of expression claims is based on "the right to file lawsuits, grievances, and send out First Class Mail, without being hampered, impeded, or retaliated against by prison officials." Doc. Ent. 1 ¶ 49. Plaintiff's fair and just treatment claim is based on "the right to be free from harassment and unfair/unjust treatment by prison officials." Doc. Ent. 1 ¶ 50. Finally, plaintiff's redress of grievances claim is based on "the right to be free from retaliatory unsubstantiated misconduct reports, punitive segregation, and unwarranted displacement, via transfer, resulting in the loss of his job assignment and other privileges associated with the close proximity he enjoyed being housed at [NRF]." Doc. Ent. 1 ¶ 51.

Plaintiff contends that, based upon the Sixth Circuit's June 24, 2005 decision in his earlier case and the Sixth Circuit's decision in *Knop v. Johnson*, 977 F.2d 996 (6th Cir 1992), defendants "knew or should have known that Plaintiff's rights . . . were and are protected and that impeding Plaintiff's access to court, interfering with Plaintiff's outgoing U.S. mail, subjecting Plaintiff to bogus unsubstantiated misconduct reports, arbitrarily placing Plaintiff in segregation, causing Plaintiff to lose his job assignment, and unfairly transferring Plaintiff in retaliation for exercising protected rights, violated the First, and Fourteenth Amendments to the

19

U.S. Constitution, and the Fair and Just Treatment Clause of the Michigan Constitution[.]" Doc. Ent. 1 ¶ 52.

Plaintiff claims that he "has suffered and will continue to suffer irreparable harm, damage and loss through [defendants'] actions and omissions[.]" Doc. Ent. 1 ¶ 53. Specifically, he claims that "[o]ne of the briefs rejected was based on newly discovered evidence & actual innocence. [His] appeal is based on the same issue. The rejection of this brief deprived [him] its use to further perfect his appeal." Doc. Ent. 1 ¶ 53a. He also contends that "[t]he rejection of the various legal pleadings prevented [him] from using said documents to assist several prisoner[s'] [with whom he] has current legal assistance agreements." Doc. Ent. 1 ¶ 53b. He also claims that the "bogus and unsubstantiated misconduct reports diminished [his] chances of the parole board granting his request for clemency." Doc. Ent. 1 ¶ 53c. Furthermore, plaintiff contends that his reclassification to segregation and his transfer from NRF caused him to "(1) lose his elected position as secretary and member of the Warden's Forum; (2) lose his job in the library; (3) deprived [him] the opportunity to visit with his lawyer, minister and children; (4) prevents [him] from providing legal assistance to 2 [prisoners] at [NRF] [with] whom [he] has a legal assistance agreement." Doc. Ent. 1 ¶ 53d.

**4.     The parties dispute whether all of plaintiff's claims have been exhausted.**

42 U.S.C. § 1997e, which governs suits by prisoners, provides in part that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[A]n inmate seeking only money damages must complete a prison administrative process that could provide

some sort of relief on the complaint stated, but no money." *Booth v. Churner*, 532 U.S. 731, 734 (2001). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The Supreme Court has held that the Prison Litigation Reform Act (PLRA) "exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2387 (June 22, 2006) (holding that "proper exhaustion," that is, exhaustion that complies with "critical procedural rules" such as time limits for filing grievances, is a precondition to any suit challenging prison conditions; failure to properly exhaust bars suit in federal court).[14]

Later, the Supreme Court decided *Jones v. Bock*, 127 S.Ct. 910, 921 (Jan. 22, 2007). Succinctly, the Court found that the PLRA does not: "[1] require a prisoner to allege and demonstrate exhaustion in his complaint, [2] permit suit only against defendants who were identified by the prisoner in his grievance, [or] [3] require courts to dismiss the entire action if the prisoner fails to satisfy the exhaustion requirement as to any single claim in his complaint." *Jones*, 549 U.S. __, slip op. at 1-2. Of particular relevance to this case are the Court's conclusions that "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints[,]" and "[c]ompliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's

---

[14]The January 9, 2007, version of MDOC Policy Directive (PD) 03.02.130 became effective after the U. S. Supreme Court's decision in *Woodward.*

requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 127 S.Ct. at 921-923.

Defendants represent that the December 19, 2003 version of MDOC PD 03.02.130 was the version "in effect during the timeframe alleged in Plaintiffs' complaint[.]" Doc. Ent. 22 at 1 ¶ 2. The December 19, 2003 version provide that "[d]ates, times, places and names of all those involved in the issue being grieved are to be included." MDOC PD 03.02.130 (12/19/2003) ¶ T. The policy directive also sets forth reasons for which a grievance may be rejected. MDOC PD 03.02.130 (12/19/2003) ¶ G.

Defendants contend that "[p]laintiff filed one grievance, on 9/16/06, regarding mail rejections. This grievance fails to exhaust his claims concerning the mail rejections in 2005 and after 9/12/06, and properly exhausts only the 9/12/06 mail rejection claim against Defendant Campbell. Therefore, all other mail rejection claims against Campbell should be dismissed." Doc. Ent. 22 at 2 ¶ 9. Defendants also contend that "[p]laintiff did not file any grievances complaining that Campbell's mail rejections were retaliatory, or that Minton's misconduct tickets were retaliatory, or that Campbell and Minton conspired against him, or that his transfer to [MCF] on 5/11/07 was retaliatory. Therefore, these claims should be dismissed." Doc. Ent. 22 at 2 ¶ 10. Also, defendants contend, "[p]laintiff did not file any grievances naming Caruso or Jackson. Therefore, all claims against Caruso and Jackson should be dismissed." Doc. Ent. 22 at 3 ¶¶ 11.

Defendants argue that "[p]laintiff's sole grievance, filed on 9/16/06, fails to exhaust his claims concerning the mail rejections in 2005 and after 9/12/06; therefore, Plaintiff did not exhaust this administrative remedies regarding all of his claims in this compliant." Doc. Ent. 22

at 11.  In conclusion, defendants argue that "[p]laintiff properly exhausted only one issue raised

in this Complaint - the 9/12/06 mail rejection by Defendant Campbell.  All other mail rejection

claims were either untimely or not exhausted."  Defendants argue that "Minton, Jackson, Caruso,

and all claims against Campbell except for the 9/12/06 mail rejection claim should be dismissed,

in accordance with 42 USC § 1997e."  Doc. Ent. 22 at 15.

In response, plaintiff argues that he "has established a constitutional claim of retaliation,

in violation of his First and Fourteenth Amendment rights, and has properly exhausted his

administrative remedies regarding all the claims presented in his complaint."  Doc. Ent. 23 at 4-

6.

**5.      The First and Fourteenth Amendment claims against Campbell related to the
         September 12, 2006 notice of package/mail rejection; against Minton related to the
         issuance of the March 26, 2007 misconduct and against Campbell and Minton
         alleging conspiracy related to the March 26, 2007 misconduct have been exhausted.
         However, the bases of these claims are somewhat unclear.**

**a.      Plaintiff's claims**

Plaintiff claims that Campbell violated his rights by "(a) rejecting incoming mail sent to

Plaintiff from civilian friends and fellow prisoners, contrary to policy and procedure; (b)

intercepting and opening Plaintiff's outgoing mail, contrary to policy and procedure; and (c)

failing to follow proper mail procedure, contrary to policy[.]" Doc. Ent. 1 ¶ 56.  Plaintiff claims

that Minton violated his rights by "(a) writing Plaintiff bogus and unsubstantiated misconduct

reports, contrary to policy and procedure; (b) having Plaintiff put in the hole contrary to policy

and procedure; and (c) causing Plaintiff to be transferred in violation of policy and procedure[.]"

Doc. Ent. 1 ¶ 58.  Plaintiff also claims that Campbell and Minton violated plaintiff's rights by

"individually and jointly, conspir[ing] to interfere and deprive Plaintiff of his rights, in

retaliation for Plaintiff exercising his right of access to court, and for complaining about their conduct[.]" Doc. Ent. 1 ¶ 60.

**b.      Exhaustion**

Defendants argue that "[p]laintiff's sole grievance filed on 9/16/06 did not exhaust his administrative remedies regarding all of his claims in this lawsuit; therefore, his claims regarding the mail rejections before and after 9/12/06 are not exhausted, and the mail rejection claim of 9/12/06 is exhausted only as to Defendant Ellen Campbell."  Doc. Ent. 22 at 12.  Defendants note that grievance NRF 2006-09-932-15a is dated 9/16/06 and has an incident day of "continuing".  Doc. Ent. 22 at 12.  Defendants claim that "[p]laintiff did not allege, nor state in his Step 1 grievance, that he made any attempt to discuss the matter with Defendant Campbell. Thus, he failed to comply with Section R of the grievance policy.  Moreover, Plaintiff's grievance filed on 9/16/06 was timely filed as to the mail rejection by Defendant Campbell that occurred on 9/12/06, but it was not timely as to the mail rejections that took place on 9/6/05, 10/11/05 (two items), or 10/24/05, and obviously does not exhaust the claims regarding the subsequent mail rejections on 9/15/06, 9/25/06, and 10/6/06."  Doc. Ent. 22 at 13.

Furthermore, defendants claim that "[p]laintiff did not exhaust his retaliation claims against Campbell relating to the mail rejections or his retaliation claims relating to misconducts from Minton, his conspiracy claim against them, or his retaliatory transfer claim."  In support of this argument, defendants contend that "[w]hile the 2005 mail rejections and Minton's 11/4/05 misconduct were raised in grievance NRF 206-09-932-15a, these issues were not *timely* raised in a grievance, therefore, they were not properly exhausted."  Defendants also contend that "[p]laintiff's sole 2006 grievance did not address [the conspiracy] claim, and [plaintiff] did not

file any other grievance alleging conspiracy." Furthermore, they contend, "[p]laintiff did not file

any grievance alleging that Minton's 3/26/07 misconduct charge was retaliatory, or that his

5/11/07 transfer was retaliatory; therefore, these claims are also not exhausted." Doc. Ent. 22 at

14. Defendants argue that plaintiff "did not exhaust his retaliation and conspiracy claims against

Campbell and Minton, or his retaliatory transfer claim." Doc. Ent. 22 at 15.

On the other hand, noting that the "incident date" was "continuing," plaintiff contends

that the issue presented in his September 16, 2006 grievance was "not the individual mail

rejection notices issued by Defendant Ellen Campbell, but rather the collective retaliatory acts of

[defendants], as a whole," in violation of his First and Fourteenth Amendment rights. He also

contends that multiple grievances challenging each of the mail rejections would have been

rejected as "duplicative". He further points out that he requested an administrative hearing after

the first (September 6, 2005) rejection. Doc. Ent. 23 at 4. He later went to the Warden's Forum,

as instructed. He also points to his September 11, 2005 letter to Campbell. Doc. Ent. 23 at 5;

Doc. Ent. 1 at 22.

Plaintiff claims he has "exhausted his Retaliation and conspiracy claims relating to

Defendants Campbell and Minton." Doc. Ent. 23 at 5-6. Specifically, he claims that his

September 16, 2006 statement that "These actions were in retaliation for challenging the

rejection of my legal documents and exercising my right of Access to Court[,]" and his April 8,

2007 grievance constitute exhaustion of his retaliation and conspiracy claims against Campbell

and Minton. Doc. Ent. 1 at 37, Doc. Ent. 23 at 5-6.

Grievance NRF-06-09-0932-15a (dated September 16, 2006) states "[t]hese actions were

in retaliation for challenging the rejection of my legal documents and exercising my right of

Access to Court." Doc. Ent. 22-4, Doc. Ent. 23 at 5. This grievance also specifically mentions Campbell, Minton and Jackson. Furthermore, the grievance mentions multiple rejections. For example, plaintiff stated that he "received several additional notices from Ms. Campbell rejecting legal documents[.]" Doc. Ent. 1 at 37. Initially, plaintiff's grievance NRF-06-09-0932-15a was denied at Step I as follows:

> Based on the investigation information above, it is concluded that the documents in question in this grievance did not and do not meet the criteria of legal property that prisoners are permitted or possess as defined in PD 04.07.112, Section M, Paragraphs 1 through 11 and therefore, were appropriately rejected by Ellen Campbell and NRF, and that the comments contained in the email memo of Richard B. Stapleton to Wardens (dated 10-24-2002) concerning 'Prisoner Mail–Motions and Briefs', which provided CLARIFICATION of the application of PD 04.07.112, Section M, are still current and valid but do not (and were not intended to) supersede PD 04.07.112 or justify overturning the mail rejection of these documents.

Doc. Ent. 1 at 39.

However, Jackson's December 18, 2006 Step II response states in part that his response "will be divided into several sections because the grievance contains some issues which will be addressed at Step II, but also contains extraneous information and incidents which the grievant should have addressed through the grievance process some time ago." Doc. Ent. 22-4 at 12. As to incidents which had occurred more than one year prior, Jackson claimed that "[t]he grievance could have been rejected at Step I due to untimely filing pursuant to PD 03.02.130 'Prisoner/Parolee Grievances'." Doc. Ent. 22-4 at 12-13.

Finally, the July 16, 2007 Step III response states, "this investigator finds the responses provided at Step I and II adequately address the merits of the main issue grieved." It further states that "[t]he record supports that no further action at this level is necessary. No violation of

MDOC PD 05.03.118 'Prisoner Mail' is found. This grievance appeal is denied." Doc. Ent. 22-4 at 2.

Plaintiff also points out that grievance NRF-2007-04-0268-27a (dated April 8, 2007) stated "[t]his complaint is filed on Ellen Campbell, NRF mail room clerk and Lt. Minton, 6-2 shift, for conspiracy to deprive me of my civil rights by submitting false smuggling misconduct report [dated March 26, 2007] and failing to follow proper policy and procedure." Doc. Ent. 23 at 6, 22. The April 12, 2007 rejection of Grievance NRF-07-04-0268-27a provides:

> Your grievance is being returned to you without processing for reason that the issue(s) contained in the grievance are nongrievable per policy. Per PD-03.02.13o - Prisoner / Parolee Grievances, decisions made by a Hearing Officer on Minor and Major misconducts, Security classification to Segregation, Visitor Restrictions, Special Designations, High or Very High Risk Classification, and issues that are directly related to the hearing process are nongrievable. Your avenue of recourse is through the Request of Rehearing process within PD-03.03.105 - Prisoner Discipline, and not through the prisoner grievance process. This Grievance is Denied.

Doc. Ent. 23 at 23.

Although grievance NRF-06-09-0932-15a was not originally denied as untimely, it is clear that Jackson's December 18, 2006 Step II response, while tardy itself, rejected some of plaintiff's appeal as untimely. Specifically, he stated: "Many of the claims made in the grievance pertain to incident which occurred over one year ago, namely: 1) the rejection of documents pertaining to prisoner Bates #190983 in September, 2005; 2) the grievant's mail being opened in October, 2005; 3) the subsequent issuance of a misconduct report relating to the opened letter; and 4) the grievant's [placement in the hole for fourteen (14) days]." Doc. Ent.

22-4 at 12-13.[15]  Under *Woodford*, the Court should conclude that any claims by plaintiff related to these matters were not properly exhausted.

On the other hand, any claims by plaintiff against Campbell or Minton related to issues that Jackson addressed in his December 18, 2006 response, such as those related to the September 12, 2006 notice of package/mail rejection, should be deemed exhausted.  Doc. Ent. 22-4 at 12-13.  This includes plaintiff's claim regarding Campbell's September 12, 2006 notice of package/mail rejection, which is mentioned in plaintiff's Step I grievance.  Doc. Ent. 1 at 37.

Furthermore, grievance NRF-2007-04-0268-27a, even though rejected as non-grievable, suffices to exhaust plaintiff's claims against Campbell and Minton to the extent they relate to the issuance of the March 26, 2007 misconduct ticket and the failure to adhere to policy and procedure and the allegation that they conspired to deprive plaintiff of his civil rights.  Doc. Ent. 23 at 22.  This would not, however, include claims related to plaintiff's March 26, 2007 placement in the hole[16] or claims related to Minton's May 11, 2007 transfer to MCF.

These conclusions are unchanged by the text of plaintiff's Step II and Step III grievance appeals.  First, plaintiff's October 24, 2006 Step II grievance appeal does not address any post-September 12, 2006 incidents specifically relating to him.  Doc. Ent. 1 at 40.  Second, plaintiff's

---

[15]The fourth item is not legible on the record.  However, plaintiff's placement in the hole in conjunction with Minton's issuance of the November 4, 2005 misconduct ticket tracks the events listed in plaintiff's Step I grievance.  Doc. Ent. 22-4 at 12-13.

[16]MDOC PD 03.03.105 governs prisoner discipline.  Major misconducts are governed by MDOC PD 03.03.105 ¶¶ K-LL, effective 01/01/2007.  In part, the policy provides that "[w]henever a prisoner is confined in temporary segregation or on toplock pending a hearing, the exact time and date of placement shall be noted on the Major Misconduct Report by the reviewing officer, who also shall immediately notify the prisoner's housing unit of this placement.  The person notified in the housing unit shall be indicated on the Major Misconduct Report."  *Id.* ¶ T.  Therefore, it does not seem that placement in administrative segregation is the natural consequence of the issuance of a major misconduct report.

Step III grievance appeal does not offer any detail to change the conclusion that post-September 12, 2006 incidents have not been exhausted by NRF-06-09-0932-15a. Doc. Ent. 1 at 42.

In sum, of plaintiff's claims against Campbell and Minton set forth in ¶¶ 56, 58 & 60, the only ones which have been exhausted are (1) plaintiff's claims against Campbell related to the September 12, 2006 notice of package/mail rejection; (2) plaintiff's claims against Minton related to the issuance of the March 26, 2007 misconduct and (3) plaintiff's conspiracy claim against Campbell and Minton related to the March 26, 2007 misconduct.[17]

Defendants contend that plaintiff did not comply with the portion of the grievance policy directive which provides in part that "prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control[,]" MDOC PD 03.02.130 ¶ R, effective 12/19/2003. Doc. Ent. 22 at 13. However, I note that this was not a basis of Gouveia's October 13, 2006 summary (Doc. Ent. 22-4 at 11); Jackson's December 18, 2006 Step II grievance response (Doc. Ent. 22-4 at 12-14); or Armstrong's July 16, 2007 Step III grievance response (Doc. Ent. 22-4 at 2). Therefore, this argument does not change my conclusion that certain claims are exhausted. *See Ellis v. Vadlamudi*, 2008 WL 2705503 (E.D. Mich. July 10, 2008) ("a prisoner who files a late complaint that is nevertheless addressed by the prison system has properly exhausted his

---

[17]As for the later notices of package/mail rejection (September 15, 2006, rejected on the basis of MDOC PD 05.03.118(D)(3); September 29, 2006, rejected on the basis of MDOC PD 04.07.112(M) and the amended notice dated October 5, 2006 and rejected on the same basis; March 9, 2007, rejected on the basis of MDOC PD 05.03.118(D)(7)), this Court is not in a position to determine whether grievances regarding these particular rejections would have been denied as duplicative. That is a matter for the MDOC to decide.

remedies."); *Jones v. Stewart*, 457 F.Supp.2d 1131, 1137 (D. Nev. 2006) ("If the agency

addresses a grievance on the merits at every level available, the inmate has 'us[ed] all steps that

the agency holds out, and do[ne] so properly (so that the agency addresse[d] the issues on the

merits).'") (quoting *Woodford*, 126 S.Ct. at 2385).

c.      *Heck* **and** *Edwards*

As previously noted, a hearing was conducted on November 18, 2005, and hearing

officer A. Baerwalde found that the charge of forgery had been established but did not find the

charge of attempted smuggling to be established.  Plaintiff was given seven (7) days toplock.

Doc. Ent. 1 at 31, Doc. Ent. 22-5 at 7.  On April 3, 2007, hearing officer A. Baerwalde found

plaintiff guilty and plaintiff received 30 days of detention, beginning April 3, 2007 and ending

May 3, 2007.  Doc. Ent. 1 at 47.  In each case, plaintiff filed a request for rehearing, but the

requests were denied.  Doc. Ent. 22 at 17 n.33.

Defendants assert that "[p]laintiff's convictions on the two major misconduct tickets

issued by Minton have not been overturned.  Therefore, Plaintiff's § 1983 claims against Minton

regarding the two misconduct tickets are barred by the 'favorable termination' requirement of

Heck[] and *Edwards*[.]" Doc. Ent. 22 at 3 ¶ 12.  Defendants argue that "[p]laintiff's claims

against Minton regarding the two misconduct tickets are not cognizable because Plaintiff was

found guilty, and the charges have not been overturned."  Doc Ent. 22 at 15-17.  Defendants

claim that the good time statute (Mich. Comp. Laws § 800.33) applies to plaintiff, and they

specifically argue that "[b]ecause loss of good time or disciplinary credits is an issue in any

major misconduct proceeding, the *Heck/Balisok* bar does apply, and Plaintiffs' § 1983 action

here is not cognizable unless and until the Forgery and Smuggling convictions have been

overturned. That has not occurred. Therefore, Plaintiff's claims against Defendant Minton

relating to the two major misconduct tickets issued must be dismissed." Doc. Ent. 22 at 17

(internal footnote omitted).

The Supreme Court has stated that "*Heck*'s requirement to resort to state litigation and

federal habeas before § 1983 is not, however, implicated by a prisoner's challenge that threatens

no consequence for his conviction or the duration of his sentence." *Muhammad v. Close*, 540

U.S. 749, 751 (2004). The Court further noted: "The assumption is that the incarceration that

matters under *Heck* is the incarceration ordered by the original judgment of conviction, not

special disciplinary confinement for infraction of prison rules. This Court has never followed the

speculation in *Preiser v. Rodriguez*, 411 U.S. 475, 499[] (1973),[18] that such a prisoner subject

to 'additional and unconstitutional restraint' might have a habeas claim independent of § 1983,

and the contention is not raised by the State here." *Muhammad*, 540 U.S. at 751-752 n.1. *See*

*also Fazzi v. Flannery*, No. Civ. 03-104-B-W, 2003 WL 23312719, *5 (D.Me. Feb. 27, 200[4])

(Report and Recommendation),[19] *adopted by* No. Civ. 03-104-B-W, 2004 WL 595097 (D. Me.

March 23, 2004). The Supreme Court criticized as mistaken the idea that "*Heck* applies

categorically to all suits challenging prison disciplinary proceedings[,]" and explained:

> But these administrative determinations do not as such raise any implication
> about the validity of the underlying conviction, and although they may affect the
> duration of time to be served (by bearing on the award or revocation of good-time
> credits) that is not necessarily so. The effect of disciplinary proceedings on good-

---

[18]"When a prisoner is put under additional and unconstitutional restraints during his lawful custody, it is arguable that habeas corpus will lie to remove the restraints making the custody illegal." *Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973).

[19]Although this report and recommendation was assigned a 2003 Westlaw citation and is dated February 27, 2003, it cites a February 25, 2004, Supreme Court decision. Furthermore, the order adopting it refers to it as dated February 27, 2004.

31

time credits is a matter of state law or regulation, and in this case, the Magistrate
expressly found or assumed that no good-time credits were eliminated by the
prehearing action Muhammad called in question. His § 1983 suit challenging this
action could not therefore be construed as seeking a judgment at odds with his
conviction or with the State's calculation of time to be served in accordance with
the underlying sentence. That is, he raised no claim on which habeas relief could
have been granted on any recognized theory, with the consequence that *Heck*'s
favorable termination requirement was inapplicable.

*Muhammad*, 540 U.S. at 754-755.[20] *See also McMillan v. Fielding*, 136 Fed.Appx. 818, 820 (6th

Cir. 2005) (Tenn.) ("to the extent that his parole was affected, McMillan may not invoke § 1983

to challenge the disciplinary conviction until the conviction is overturned.")

In addition to *Heck* and *Edwards*, defendants rely on the post-*Muhammad* decision of

*Wilkinson v. Dotson*, 544 U.S. 74 (2005), wherein "[t]wo state prisoners brought an action under

42 U.S.C. § 1983 claiming that Ohio's state parole procedures violate the Federal Constitution[]"

in which they sought declaratory and injunctive relief. *Wilkinson*, 544 U.S. at 76. The Court

considered "whether they may bring such an action under Rev. Stat. § 1979, 42 U.S.C. § 1983,

the Civil Rights Act of 1871, or whether they must instead seek relief exclusively under the

federal habeas corpus statutes." *Id*. The Court stated:

> . . . a state prisoner's § 1983 action is barred (absent prior invalidation)–no matter
> the relief sought (damages or equitable relief), no matter the target of the
> prisoner's suit (state conduct leading to conviction or internal prison
> proceedings)–*if* success in that action would necessarily demonstrate the
> invalidity of confinement or its duration.

*Id*. at 81-82 (emphasis in original). The Court concluded that "respondents' claims are

cognizable under § 1983, i.e., they do not fall within the implicit habeas exception. Dotson and

_____

[20]*Muhammad* originated in this district. *See* Case No. 98-CV-10153.

Johnson seek relief that will render invalid the state procedures used to deny parole eligibility (Dotson) and parole suitability (Johnson)." *Wilkinson*, 544 U.S. at 82.

Plaintiff claims he "has established a cognizable constitutional clam, where defendant Minton wrote plaintiff three misconduct tickets in retaliation for plaintiff exercising his First Amendment right of access to court." Doc. Ent. 23 at 7-8. Plaintiff contends that "the issue he challenges in this case is the injury he suffers as a result of Defendant's retaliation, not the judgment of the state disciplinary proceeding." Doc. Ent. 23 at 7. Plaintiff relies upon *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), wherein plaintiff alleged that "Eby issued the misconduct ticket in retaliation for a previously filed grievance, and asks that the finding of misconduct be set aside (in addition to including a request for damages)." *Thomas*, 481 U.S. at 438. The Sixth Circuit stated, "*Dotson* establishes that when the relief sought in a § 1983 claim has only a potential effect on the amount of time a prisoner serves, the habeas bar does not apply." *Id.* at 439. The Sixth Circuit concluded that "success in Thomas's § 1983 claim would not necessarily affect the duration of his sentence because prison officials would retain discretion regarding whether to grant him parole. Accordingly, the habeas exception does not bar Thomas's § 1983 claim." *Id.* at 440. Plaintiff claims that, as in *Wilkinson*, plaintiff "seeks a 'new eligibility review,' and expungement of the two misconduct tickets 'which will speed <u>consideration</u> of a new parole application.'" Doc. Ent. 23 at 8.

Additionally, plaintiff points out that he was found not guilty of the October 31st / November 4, 2005 smuggling misconduct. Furthermore, he contends, he is ineligible for good time or disciplinary credits, because he is serving a mandatory life sentence. Doc. Ent. 23 at 8.

The Court should conclude that plaintiff's exhausted claim against Minton related to the issuance of the March 26, 2007 misconduct is not barred by *Heck*, because Plaintiff contends that "the issue he challenges in this case is the injury he suffers as a result of Defendant's retaliation, not the judgment of the state disciplinary proceeding."  Doc. Ent. 23 at 7.

**d.      Plaintiff's exhausted First and Fourteenth Amendment claims**

At this point, it would be premature for the Court to consider whether any of the aforementioned exhausted claims against Campbell and Minton survive summary judgment.  In their motion, defendants argue that "[p]laintiff did not file any grievances complaining that Campbell's mail rejections were retaliatory, or that Minton's misconduct tickets were retaliatory, or that Campbell and Minton conspired against him, or that his transfer to [MCF] on 5/11/07 was retaliatory."  Doc. Ent. 22 at 5.  As discussed above, some of these claims are belied by plaintiff's April 8, 2007 grievance (NRF-07-04-0268-27a).

However, the basis of plaintiff's exhausted claim is somewhat unclear.  Plaintiff's September 16, 2006 grievance (NRF-06-09-0932-15a) mentions retaliation as to the earlier notice of package/mail rejection, but only mentions other First and Fourteenth Amendment rights, such as freedom of speech, access to courts, due process and freedom from staff abuse of authority, with respect to the September 12, 2006 notice of package/mail rejection.  Doc. Ent. 22-4 at 9.  Also, plaintiff's April 8, 2007 grievance (NRF-07-04-0268-27a) alleges the falsity of his March 26, 2007 major misconduct report, a failure to follow proper policy and procedure, and a conspiracy between Campbell and Minton; however, it does not allege that the issuance of the misconduct was retaliatory.  Nor do plaintiff's causes of action against Campbell (¶ 56) and Minton (¶ 58) offer a more specific basis of his First and Fourteenth Amendment claims.

It seems apparent from the record that plaintiff intends to allege First and Fourteenth Amendment claims based upon retaliation and/or access to courts. For example, even though it relates to unexhausted claims, plaintiff notes that just days before Minton placed him in the hole (November 4, 2005), Judge Tarnow issued the writ of habeas corpus ad testificandum in Case No. 2:01-CV-72729 (October 28 , 2005). Doc. Ent. 1 at 10 ¶ 23, 30. Plaintiff claims he "was taken to court from the hole and denied access to his legal documents which he needed to properly prepare for the civil trial." Doc. Ent. 1 at 10 ¶ 24. Plaintiff also notes that, the day after the jury returned its verdict in favor of plaintiff in Case No. 2:01-CV-72729, the hearing officer found him not guilty of the smuggling charge and guilty of the forgery charge. Also, plaintiff was released from the hole. Doc. Ent. 1 at 10 ¶¶ 25-26.

With respect to an exhausted claim, plaintiff claims that on March 26, 2007, after he was placed in the processing cage, Minton approached plaintiff and stated: "Lawsuits and Grievances have a way of coming back to bite you in the ass. You got out of my last ticket, but we're going to make sure you don't beat this one." Plaintiff responded, "we will see what a judge has to say about this." Defendant replied, "Judges don't run shit in here, we do." Doc. Ent. 1 at 12 ¶ 39.

Furthermore, the "legal claims" section of plaintiff's complaint mentions the right to petition the government for redress of grievances, freedom of speech, access to court and the Fair and Just Treatment Clause of the Michigan Constitution[.]" Doc. Ent. 1 ¶¶ 47-51. Therefore, in lieu of proceeding on these assumptions on a motion for summary judgment, it would be more prudent for the Court to permit plaintiff to amend his complaint to clarify the basis of his First and Fourteenth Amendment allegations with respect to the aforementioned, exhausted claims. This avenue is preferable to dismissal without prejudice, as this is a pro se plaintiff and the

aforementioned portions of the record strongly suggest that the bases for these claims are retaliation and/or access to courts.

e.    **Plaintiff's conspiracy claim**

Paragraph 60 of plaintiff's complaint does not set forth the specific statute under which he brings his conspiracy claim.  Perhaps this claim is brought under 42 U.S.C. § 1985, which governs "[c]onspiracy to interfere with civil rights".  To the extent, if at all, plaintiff intended to bring his claim pursuant to 28 U.S.C. § 1985(3), "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).  Paragraph 60 does not contain an allegation that defendants Campbell and Minton's discriminatory animus was class-based.

Perhaps this claim is brought, in defendants' words, as a "general civil conspiracy".  Doc. Ent. 22 at 17.  The Sixth Circuit has stated:

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Hooks v. Hooks*, 771 F.2d 935, 943-944 (6th Cir. 1985).  *See also Memphis, Tennessee Area Local, American Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004) (same).

Defendants argue that "[p]laintiff's allegations of conspiracy are conclusory and fail to state a claim upon which relief can be granted; therefore, they are subject to dismiss[al] pursuant to Fed R Civ P 12(b)(6)."  Doc. Ent. 22 at 3 ¶ 13.  Within their argument that "[p]laintiff's

36

complaint allegations are insufficient to state a conspiracy claim[,]" Doc. Ent. 22 at 17-18, defendants claim that ¶ 60 does not allege "any facts to support a theory that Defendants Campbell and Minton formed an agreement to violate Plaintiff's constitutional rights." Doc. Ent. 22 at 18.

Plaintiff claims that his complaint "sufficiently establishes that defendants Campbell and Minton conspired to retaliate against him for exercising his First Amendment right of access to court[.]" Doc. Ent. 23 at 9-11. Plaintiff claims that Campbell illegally intercepted and opened plaintiff's October 31, 2005 letter to Zadvosky. According to plaintiff, Minton "was a sergeant at the time, in charge of the Segregation Unit (the hole) and had nothing to do with prisoner mail issues." Plaintiff claims that Campbell gave the rejected letter to Minton, because "Minton has a reputation for harassing, writing bogus misconduct tickets and putting prisoners in segregation[.]" Minton then issued plaintiff the November 4, 2005 misconduct ticket and took plaintiff to the hole. Eventually, plaintiff was found not guilty of the charge of smuggling but guilty of the charge of forgery. Doc. Ent. 23 at 9. Plaintiff claims his envelope "was not altered in any way, and therefore the charge of Forgery was not established." According to plaintiff, Minton "knowingly elected to write the infraction as Forgery, because it is a major misconduct violation, rather than, correctly, as Contraband, which is a minor misconduct violation." Doc. Ent. 23 at 9 n.2.

Furthermore, plaintiff contends that he was issued his eighth mail rejection notice on March 21, 2007.[21] Here, plaintiff alleges that Campbell gave the mail associated with the March

---

[21]The latest notice of package/mail rejection in the record is dated March 9, 2007. A conclusion that plaintiff is referring to the March 9, 2007 mail rejection is supported by the "Table of Exhibits" to his complaint, wherein Exhibit L is described as a March 21, 2007 rejection notice.

9, 2007 rejection to Minton. Plaintiff further alleges that Minton handcuffed plaintiff, took him to the hole, and issued the March 26, 2007 misconduct ticket. Doc. Ent. 23 at 10. Plaintiff claims that Minton "did not present any evidence that Plaintiff requested the information be sent to the prison[.] Thus, the Smuggling charge was not established. However, Defendant Minton knows that 98% of all misconduct tickets are upheld whether they are bogus or not." Plaintiff points out that "facts found (or assumed) by a prison disciplinary board are not entitled to the presumption of correctness that 28 U.S.C. § 2254(e) affords to judicial findings." *Johnson v. Finnan*, 467 F.3d 693, 694 (7th Cir. 2006) (citing *Piggie v. McBride*, 277 F.3d 922, 925 (7th Cir.2002))." Doc. Ent. 23 at 10 n.3.

According to plaintiff, "it must be reasonably concluded that the only way Defendant Minton could learn the contents of Plaintiff's mail was through Defendant Campbell. That said 'meeting of minds' establish, at a minimum, circumstantial evidence, that Defendants Campbell and Minton participated in a concerted effort to censor, harass and retaliate against Plaintiff." Here, plaintiff relies upon *Weberg v. Franks*, 229 F.3d 514 (6th Cir. 2000). Doc. Ent. 23 at 11.[22] In *Weberg*, the Sixth Circuit noted that "'[r]arely in a conspiracy case will there be direct evidence of an express agreement among all the conspirators to conspire, ... circumstantial evidence may provide adequate proof of conspiracy.'" *Weberg*, 229 F.3d at 528 (referencing *Bell*

----

Doc. Ent.1 at 19. However, Exhibit L is actually the March 9, 2007 rejection notice. Doc. Ent. 1 at 45.

[22]Therein the Sixth Circuit stated "'[a] civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy.'" *Weberg*, 229 F.3d at 526 (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-944 (6th Cir. 1985).

*v. City of Milwaukee*, 746 F.2d 1205, 1255 (7th Cir. 1984)[23]).  Plaintiff adds that "[i]f this Court

requires additional facts to sufficiently decide this claim, Plaintiff requests that this Court issue

an order directing Defendants to provide the discovery materials requested in Plaintiff's 10/13/07

motion for Discovery, (i.e., interrogatories, admissions and production of documents) and allow

Plaintiff to supplement this claim."  Doc. Ent. 23 at 11 n.4.  In conclusion, he asserts that he "has

established, at a minimum, circumstantial evidence that . . . Campbell and Minton had a meeting

of minds and conspired to injure Plaintiff in retaliation for exercising his First Amendment right

of Access to Court."  Doc. Ent. 23 at 11.

The Supreme Court has held that "a federal court may [not] apply a 'heightened pleading

standard'-more stringent than the usual pleading requirements of Rule 8(a) of the Federal Rules

of Civil Procedure-in civil rights cases alleging municipal liability under Rev.Stat. § 1979, 42

U.S.C. § 1983." *Leatherman v. Tarrant County Narcotics and Intelligence and Coordination

Unit*, 507 U.S. 163, 164 (1993).  It has also held that "an employment discrimination complaint .

. . . must contain only 'a short and plain statement of the claim showing that the pleader is

entitled to relief.'  Fed. Rule Civ. Proc. 8(a)(2)[,]" and that "an employment discrimination

plaintiff need not plead a prima facie case of discrimination[.]"  *Swierkiewicz v. Sorema N.A.*,

534 U.S. 506, 508, 515 (2002).

The Court should deny without prejudice defendants' motion to dismiss plaintiff's

exhausted conspiracy claim - a conspiracy claim against Campbell and Minton related to the

March 26, 2007 misconduct.  First, "[c]laims made pursuant to 42 U.S.C. § 1983 are not subject

---

[23]"We therefore overrule our decision in *Bell* insofar as it recognized a constitutional right
to recover for the loss of the companionship of an adult child when that relationship is terminated
as an incidental result of state action."  *Russ v. Watts*, 414 F.3d 783, 791 (2005).

to heightened pleading standards." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 577 (6th Cir.

2004) (citing in part *Leatherman*, 507 U.S. at 165-166).  *See also Memphis, Tennessee Area*

*Local, American Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d at 902.  Relying

in part upon *Swierkiewicz*, the Seventh Circuit has stated, "it is enough in pleading a conspiracy

merely to indicate the parties, general purpose, and approximate date, so that the defendant has

notice of what he is charged with."  *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002).

*See also Backof v. New Jersey State Police*, 92 Fed.Appx. 852, 856 (3d Cir. 2004) ("While that

case involved a private party who participated in a conspiracy with state officials, we did not

distinguish among § 1983 cases for the purposes of the notice pleading rule.").  Plaintiff's

allegation that Campbell gave Minton the offending mail which precipitated the March 26, 2007

misconduct is more than a conclusory allegation.

     Moreover, it would be more prudent to first determine the basis of the underlying

constitutional allegation.  *See Choate's Air Conditioning & Heating Inc., v. Light, Gas, Water*

*Division of City of Memphis*, 16 Fed.Appx. 323, 332 (6th Cir. 2001) ("The district court properly

dismissed this claim, as it, like the substantive due process claim, failed to allege an independent

federal statutory or constitutional violation.").  If one is not alleged, then the conspiracy claim

can be dealt with on that basis.

**6.**     **Plaintiff's claim against Caruso is unexhausted.  Plaintiff's claim against Jackson
related to the September 12, 2006 notice of package/mail rejection is exhausted;
however, it does not allege the requisite personal involvement.**

**a.**     **Plaintiff's claims**

     Plaintiff claims that Jackson violated his rights, "by complicity and acquiescence in the

actions of . .. Campbell and Minton, did by said acts and omissions, violate [his] rights[.]" Doc.

Ent. 1 ¶ 62.  Plaintiff also claims that Caruso, "by virtue of Responde[a]t Superior/Vicarious Liability, is responsible for the actions of . . . Campbell, Minton and Jackson[.]" Doc. Ent. 1 ¶ 64.

### b.    Exhaustion

Defendants argue that plaintiff "did not file any grievances naming Caruso or Jackson." They argue that "[p]laintiff's claims against Caruso and Jackson [should] be dismissed for lack of exhaustion[.]"  Doc. Ent. 22 at 5, 14-15.  Specifically, defendants contend that "[p]laintiff did not file any grievances naming either Jackson or Caruso, charging them with denying them his rights regarding mail, or acquiescing in the mail rejections.  Therefore, Plaintiff did not exhaust his administrative remedies against Jackson or Caruso."  Doc. Ent. 22 at 15.

Plaintiff argues that his claims against Jackson and Caruso have been exhausted.  In support of this argument, he claims that Jackson had notice via the September 2005 Warden's Forum and the September 16, 2006 grievance.  Doc. Ent. 23 at 6.

Grievance NRF-07-04-0268-27a relates only to Campbell and Minton; therefore, in the absence of any other relevant grievances, any exhaustion of claims against Jackson and Caruso would have to have been accomplished by grievance NRF-06-09-0932-15a.  This grievance does not mention Caruso.  Doc. Ent. 22-4 at 7, 9.  As previously noted, the December 19, 2003 version of the prisoner grievance policy provides that "[d]ates, times, places and names of all those involved in the issue being grieved are to be included."  MDOC PD 03.02.130 (12/19/2003) ¶ T.  Therefore, plaintiff's claim against Jackson has not been exhausted.

However, this grievance does mention Jackson in several places.  Based upon my foregoing conclusion that only some of plaintiff's claims described in this grievance have been

properly exhausted, the Court must consider whether any allegations against Jackson related to conduct immediately preceding the September 16, 2006 grievance exhaust plaintiff's claims against Jackson. In his September 16, 2006 grievance NRF-06-09-0932-15a, plaintiff alleged that "[t]wo days ago [September 14, 2006], I spoke to Warden Jackson regarding this matter and inquired whether I should file a grievance since I hadn't received a response clarifying this issue. Warden Jackson stated that he basically agreed with [Campbell's] position, but that I should file the grievance up the la[dd]er and obtain clarification. The previous and continuing aforementioned actions were and are in violation of my First and Fourteenth Amendment rights to Freedom of Speech, Access to Courts, Due Process and Freedom from Staff abuse of Authority." Doc. Ent. 22-4 at 9. Plaintiff's reference to "this matter" is based upon his comment that since Judge Tarnow's November 10, 2005 issuance of a writ of habeas corpus ad testificandum in his previous case, plaintiff had "received a half dozen additional notices from Ms. Campbell, rejecting legal documents sent to me; the latest of which is dated 9-12-06[.]" Doc. Ent. 22-4 at 9. Arguably, this grievance accuses Jackson of his acquiescence in Campbell's September 12, 2006 rejection of plaintiff's mail. Consistent with my foregoing conclusion regarding exhaustion as to Campbell and Minton, this grievance would not exhaust plaintiff's claim that Jackson acquiesced in Minton's November 2005 conduct.

In sum, of plaintiff's claims against Jackson and Caruso set forth in ¶¶ 62 & 64, the only ones which have been exhausted are Jackson's complicity and acquiescence regarding Campbell's issuance of the September 12, 2006 notice of package/mail rejection. Plaintiff has not exhausted his claim as to Caruso.

**c.      Personal involvement**

Plaintiff claims that Caruso and Jackson "enjoyed actual and constructive knowledge of [his] First and Fourteenth Amendment rights[.]" Doc Ent. 1 ¶¶ 4, 5. According to plaintiff, when he follow up with Jackson at the following Warden's Forum meeting, Jackson "advised that he had spoken to Defendant Campbell, but was still looking into the matter." Doc. Ent. 1 at 9 ¶ 17.

Defendants argue that "[p]laintiff's allegations against Caruso and Jackson are based on their alleged failure to rectify an alleged wrong after the fact. Plaintiff's complaint allegations against Caruso and Jackson fail to state a claim." Doc. Ent. 22 at 3 ¶ 14. Defendants also argue that "[p]laintiff is suing Defendant Caruso and Defendant Jackson under a respondeat superior theory of liability, which is insufficient to establish the requisite personal involvement for a suit under 42 USC § 1983." Doc. Ent. 22 at 18-20. Defendants contend that "[b]ringing a complaint to the attention of supervisory officials is insufficient." Doc. Ent. 22 at 19. Defendants conclude that "[p]laintiff has not shown that Defendants Caruso and Jackson were personally involved in any mail rejections, retaliation, or any other actions that affected Plaintiff." Defendants assert that plaintiff's claims against Caruso and Jackson should be dismissed with prejudice under 42 U.S.C. § 1997e(c)(1), (2). Doc. Ent. 22 at 20.

Plaintiff argues that Jackson and Caruso "were personally involved in the violation of plaintiff's First Amendment rights and should be held liable[.]" Doc. Ent. 23 at 12-13. Plaintiff contends that he "personally informed Defendant Jackson of the problems he was having with Defendant Campbell." Here, he refers to the text of his September 16, 2006, Step I grievance and Jackson's response to the September 2005 Warden's Forum. Plaintiff also contends that Jackson "was also advised of the rejection of Plaintiff's mail by Defendant Campbell[,]" based upon Campbell's October 10, 2005 and October 11, 2005 representations that Warden Jackson

had been shown the notices of package/mail rejection (or the underlying mail). Consequently, plaintiff argues, "Jackson was not only informed of Defendant Campbell's blatant violation of mail policy, as set forth in the Stapleton memo, but sanctioned and acquiesced in said actions." Doc. Ent. 23 at 12. Plaintiff maintains that his complaint establishes Jackson's personal involvement and liability. Doc. Ent. 23 at 13.

Plaintiff claims that Caruso did not fix the problem after receiving notice of it via the September 2005 Warden's Forum report.[24] Plaintiff asserts that he "requires the discovery materials requested in [his] 9/17/07 Motion for Discovery . . . so he may further demonstrate Defendant Caruso's liability[.]" Doc. Ent. 23 at 13. In support of this statement, he cites *Salahuddin v. Coughlin*, 993 F.2d 306, 309-310 (2d Cir. 1993) ("In the absence of adequate discovery, the reasonableness of transferring to Sullivan those prisoners who required congregate religious services such as Salahuddin remains very much an open question."). Plaintiff asks that the Court require defendants to provide him with the requested discovery, delay ruling on the issue of personal involvement, and permit plaintiff thirty (30) days after receipt of the requested discovery to supplement his claim. Doc. Ent. 23 at 13.

Here, the Court must determine whether the plaintiff has shown that Jackson was personally involved with respect to plaintiff's claim against Jackson related to the September 12, 2006 notice of package/mail rejection. As stated in the text of the September 16, 2006 grievance, plaintiff spoke with Jackson on September 24, 2006 regarding notices of package/mail rejections "and inquired whether I should file a grievance since [he] hadn't

---

[24]Plaintiff notes that he seeks only declaratory and injunctive relief from Caruso. Doc. Ent. 23 at 13.

received a response clarifying this issue. Warden Jackson stated that he basically agreed with Ms. Cam[p]bell's position, but that [he] should file the grievance up the la[dd]er and obtain clarification. The previous and continuing aforementioned actions were and are in violation of my First and Fourteenth Amendment rights to Freedom of Speech, Access to courts, Due Process and Freedom from Staff abuse of Authority." Doc. Ent. 1 at 37.

Liability in a § 1983 action cannot be based on a theory of *respondeat superior*. *See Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (1978). "[T]he mere right to control without any control or direction having been exercised and without any failure to supervise is not enough to support § 1983 liability." *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 n.58 (1978), citing *Rizzo v. Goode*, 423 U.S. 362, 370-371 (1976).

As the Sixth Circuit has stated:

"Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. *At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.*"

*Taylor v. Michigan Dep't of Corrections*, 69 F.3d 76, 81 (6th Cir. 1995) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (emphasis added)) (emphasis by *Taylor* court); *see also*, *Monell*, 436 U.S. at 693-95; *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989); *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982).

Several cases from the Sixth Circuit provide guidance about the analysis of a supervisory liability claim. For example, the Court has stated that "[p]laintiff must prove that [the supervisor defendants] did more than play a passive role in the alleged violations or show mere tacit approval of the goings on. Plaintiff must show that the supervisors somehow encouraged or

45

condoned the actions of their inferiors." *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th

Cir. 2006) (internal and external citations omitted).

    Furthermore, the Sixth Circuit has stated:

> "Supervisor liability [under § 1983] occurs either when the supervisor personally
> participates in the alleged constitutional violation or when there is a causal
> connection between actions of the supervising official and the alleged
> constitutional deprivation. The causal connection can be established when a
> history of widespread abuse puts the responsible supervisor on notice of the need
> to correct the alleged deprivation, and he [she] fails to do so. The deprivations
> that constitute widespread abuse sufficient to notify the supervising official must
> be obvious, flagrant, rampant, and of continued duration, rather than isolated
> occurrences."

*Doe v. City of Roseville*, 296 F.3d 431, 440 (6th Cir. 2002) (quoting *Braddy v. Fla. Dep't of*

*Labor & Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 1998).

    Also, the Court has provided that where defendants' "only roles . . . involve the denial of

administrative grievances or the failure to act . . . they cannot be liable under § 1983." *Shehee v.*

*Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[L]iability under § 1983 must be based on active

unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee*, 199 F.3d at

300 (citing *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir.1998)). Claims

which are based simply on the denial of a grievance do not state a claim of constitutional

dimension. *See Martin v. Harvey*, No. 00-1439, 2001 WL 669983, **2 (6th Cir. 2001)

(unpublished) ("The denial of the grievance is not the same as the denial of a request to receive

medical care."); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (as against defendants

whose only involvement was the denial of administrative remedies and the "failure to remedy the

alleged retaliatory behavior[,]" "[t]here is no allegation that any of these defendants directly

participated . . . in the claimed . . . acts[].");  *Weaver v. Toombs*, 756 F.Supp. 335, 337 (W.D.

Mich. 1989) ("The mere fact that these defendants found plaintiff Martin's grievance concerning the seizure to be without merit is insufficient to state a claim against them.").

Furthermore, an allegation that a supervisor was aware of an actionable wrong committed by a subordinate and failed to take corrective action "is insufficient to impose liability on supervisory personnel under § 1983." *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). "[A] failure of a supervisory official to supervise, control, or train the offending individual officers is not actionable absent a showing that the official either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982).

There is no allegation that Jackson encouraged or directly participated in the issuance of the September 12, 2006 notice of package/mail rejection. To the extent plaintiff spoke with Jackson on September 14, 2006, Jackson cannot be held liable solely on his failure to act. The Sixth Circuit's direction in *Shehee*, *Poe*, and *Hays* compels the conclusion that plaintiff's claim against Jackson regarding the September 12, 2006 notice of package/mail rejection does not allege sufficient personal involvement to state a supervisory claim against Jackson under § 1983. This is unchanged by the plaintiff's assertion in his Step I grievance that Jackson agreed with Campbell's determination, which is not the same as Jackson's knowing acquiescence in the issuance of the notice. Here, the acquiescence was Jackson's approval of her decision, which amounts to a claim that Jackson failed to take corrective action. In other words, it amounts to a claim that Jackson was "aware of alleged [wrong], but did not take appropriate action. This is

insufficient to impose liability on supervisory personnel under § 1983." *Poe*, 853 F.2d at 429

(citing *Bellamy*, 729 F.2d at 421).

**d.    Jackson may offer a defense in this case.**

Plaintiff claims that he is entitled to summary judgment against Jackson, because Jackson

"is procedurally barred form filing any defense in the above entitled matter, where he failed to

timely respond to plaintiff's grievance, in violation of the grievance policy, which denied

plaintiff due process[.]"  Doc. Ent. 23 at 15-17.

Plaintiff claims that Jackson's response to his October 24, 2006, Step II grievance appeal

was due "within 15 business days after receipt of the grievance, unless an extension is

granted[.]" Doc. Ent. 22-6 (MDOC PD 03.02.130 ¶¶ EE, effective 12/19/2003); Doc. Ent. 23 at

15.  In his Step III grievance appeal, filed on or about November 21, 2006, plaintiff stated: "This

appeal is filed because the Administrative Assistant at NRF (Warden Jackson) declined to

respond to the Step II grievance appeal n the above entitled matter and stated that I should

submit my Step III appeal to the Director's office."  Doc. Ent. 22-4; Doc. Ent. 23 at 15.

Plaintiff claims that Jackson "never furnished [plaintiff] a copy of the 12/18/06

Grievance Response, which is a blatant violation of the MDOC Grievance Policy 03.02.130, p.

5, ¶GG[.]"  Plaintiff also claims that Jackson's response was tardy under MDOC PD 03.02.130,

p. 5, ¶EE.  Plaintiff claims that this failure to provide him with a copy of Jackson's Step II

grievance response resulted in a denial of "his due process right to file a Step III appeal,

challenging the allegations and theories Defendants assert therein."  As plaintiff notes, "[t]ime

limitations shall be adhered to by the grievant and staff in all steps of the grievance process."

MDOC PD 03.02.130 ¶ U.  Plaintiff contends that this violation "requires that the Step II

[12/18/06] & III [7/16/07] Grievance Responses be stricken, as procedurally defaulted and the contents thereof determined inadmissible for argument by Defendants." Doc. Ent. 23 at 16, 17.

Plaintiff claims that if he had not complied with MDOC PD 03.02.130's deadline, "his grievance appeal would have been dismissed for procedural default without exception." Doc. Ent. 23 at 16 (citing *Woodford*). Therefore, he contends, Jackson "must be held to the same standard, as required by MDOC policy." Doc. Ent. 23 at 16. Plaintiffs also contend that defendants cannot seek dismissal of his complaint for failure to properly exhaust when "the evidence establishes that the Defendants themselves did not comply with the relevant grievance policy." Doc. Ent. 23 at 17.

Plaintiff points out that the July 16, 2007 Step III grievance response provided:

All relevant information was considered; including the Step II appeal response provided by NRF, but not included in the grievant's Step III appeal submissions. [It is noted that the NRF Step II appeal response is dated 12/18/06 and the Step II Grievance Appeal Receipt instructs the grievant that he would receive a response by November 17, 2006, and that if he did not receive a response, he could submit the Step III appeal.]

Doc. Ent. 22-4; Doc. Ent. 23 at 17. Plaintiff asserts that defendants cannot move for dismissal on the basis that he failed to exhaust his administrative remedies "when the evidence establishes that the Defendants themselves did not comply with the relevant Grievance Policy. [They] cannot have it both ways." Doc. Ent. 23 at 17.

Plaintiff has cited no case law to support the conclusion that Jackson is not entitled to assert a defense to the claims against him in the instant case pursuant to the Federal Rules of Civil Procedure. Additionally, in addition to seeking summary judgment against Jackson, plaintiff seeks to have the December 18, 2006 Step II and July 16, 2007 Step III grievance responses stricken "as procedurally defaulted and the contents ruled inadmissible for argument

by Defendants." Doc. Ent. 23 at 17.  However, on October 1, 2007, I entered an order denying

plaintiff's motion to strike defendant's Step II grievance response.  Doc. Ent. 15.

III.     **NOTICE TO PARTIES REGARDING OBJECTIONS**:

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to act within ten (10) days of service of a copy hereof as

provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific

objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140

(1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United

States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but

fail to raise others with specificity, will not preserve all the objections a party might have to this

Report and Recommendation.  *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v.

Detroit Federation of Teachers Local 231, American Federation of Teachers*, AFL-CIO, 829

F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections

is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the

opposing party may file a response.  The response shall be not more than five (5) pages in length

unless by motion and order such page limit is extended by the Court.  The response shall address

specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 8/25/08

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on August 25, 2008.

s/Eddrey Butts
Case Manager