**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DARRELL SIGGERS,

        Plaintiff,

v.

        Civil Case No. 07-12495

        HON. MARIANNE O. BATTANI

ELLEN M. CAMPBELL, *ET AL.*,

        Defendants.

_____/

## OPINION AND ORDER ADOPTING IN PART AND REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTION TO DISMISS

**I.    INTRODUCTION**

Before the Court are Plaintiff's, (Doc. 39), and Defendants', (Doc. 34), Objections to the Magistrate Judge's August 25, 2008, Report and Recommendation (R&R), (Doc. 31). In addition, the Court has received a motion from Plaintiff requesting either an evidentiary hearing or a pre-trial conference. (Doc. 38).

Siggers initiated this case by filing a civil action under 42 U.S.C. § 1983 complaining that Defendants' actions violated his rights to freedom of speech, of access to the courts, to receive fair and just treatment, and to petition the government for the redress of grievances. Siggers claims that Defendants' actions were independent violations of these rights and in retaliation for his exercise of these rights. Defendants filed a motion to dismiss the complaint, and the magistrate judge recommended

granting in part and denying in part the motion to dismiss. For the reasons discussed below, the Court **ADOPTS IN PART AND REJECTS IN PART** the R&R.

## II. STATEMENT OF FACTS

The R&R lays out the facts of this case, and no party has objected to the R&R's discussion of the facts. Accordingly, the Court adopts the R&R's recitation of the facts. (See doc. 31 at 2-4, 9-16).

Siggers complains that the Defendants violated his constitutional rights when, among other things, his mail was rejected on numerous occasions and he was given two major misconduct tickets. Defendant Ellen Campbell was mail room clerk at the Mound Correctional Facility (MCF) who was involved with rejecting Siggers' mail. Defendant Norman Minton was a lieutenant at the MCF, where Siggers was housed, and he wrote the two major misconduct tickets against Siggers. Defendant Andrew Jackson was the warden at the MCF. Defendant Patricia Caruso was the Director of the Department of Corrections.

## III. STANDARD OF REVIEW

After the parties are served with a magistrate judge's R&R, they may file written objections to the R&R's recommendations. The district court judge reviews *de novo* any of the R&R's recommendations to which either party has objected. 28 U.S.C. § 636(b)(1)(C); FED.R.CIV.P. 72(b). By not objecting to a finding in the R&R, a party

waives any right to challenge that finding.  United States v. Sullivan, 431 F.3d 976, 984 (6th Cir. 2005).

The R&R also recommends treating Defendants' motion to dismiss as a motion for summary judgment because it relies on matters outside of the pleadings.  Neither party has objected to this recommendation.  Therefore, the Court construes Defendants' motion to dismiss as a motion for summary judgment.  See id.

Federal Rule of Civil Procedure 56(c) authorizes the Court to grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  There is no genuine issue of material fact if there is not a factual dispute that could affect the legal outcome on the issue.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In determining whether to grant summary judgment, this Court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party."  Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 332 (6th Cir. 2008).  However, "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial."  FED.R.CIV.P. 56(e)(2).

**IV.   ANALYSIS**

In the R&R, the magistrate judge recommended granting in part and denying in part Defendants' motion to dismiss.  In particular, the magistrate judge recommended

finding that Siggers only exhausted (1) his claims against Campbell and Jackson relating to a September 12, 2006, notice of mail rejection and (2) his claims against Campbell and Minton relating to a March 26, 2007, misconduct ticket. Also, the R&R recommended finding that, although the claim against Jackson relating Siggers' September 12, 2006, notice of mail rejection was exhausted, Siggers did not allege that Jackson had the necessary level of personal involvement. The Court agrees with the magistrate judge's finding that Siggers exhausted his claims against Campbell and Jackson relating to the September 12, 2006, notice of mail rejection, but that Jackson did not have the required level of personal involvement. The Court disagrees with the magistrate judge's finding that Siggers' exhausted his claims against Campbell and Minton relating to the March 26, 2007, misconduct ticket. Accordingly, for the reasons discussed below, the Court adopts in part and rejects in part the R&R.

### A. Exhaustion

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e *et seq.*, states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that this "exhaustion requirement requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). Proper exhaustion includes, among other things, complying with procedural rules, such as any rules for timely filing grievances. Id. at 95. The only rules relevant to the determination of whether a prisoner has properly exhausted his claim "are defined not by the PLRA, but

4

by the prison grievance process itself." Jones v. Block, 549 U.S. 199, 127 S.Ct. 910, 922-23 (2007).

*1. Mail rejections*

Siggers claims that Campbell violated his constitutional rights numerous times by rejecting his mail. Michigan Department of Corrections (MDOC) policy directive 05.03.118(KK) states that, after a prisoner receives a notice of package/mail rejection, the prisoner has the right to a prompt hearing conducted pursuant to Michigan Administrative Code Rule 791.3310. Such a hearing is a fact-finding hearing at which the prisoner has the right to be present, speak on his own behalf, and receive a copy of any relevant documents. MICH. ADMIN. CODE r. 791.3310. A prisoner who disagrees with the outcome of such a hearing may file a grievance. MDOC policy directive 05.03.118(SS).

Siggers argues that the magistrate judge erred in finding that he failed to exhaust his claims relating to the mail rejections where he did not file specific grievances because the grievance process is not the prescribed procedure for challenging mail rejections. Siggers is incorrect, however, as shown by the applicable regulations, which state that a prisoner has a right to a hearing concerning the rejection of mail and that, if the prisoner would like to contest the result of the hearing, he must file a grievance. See MDOC policy directive 05.03.118(KK) and (SS).

Siggers alleges that he did not file grievances relating to a number of the mail rejections because he was advised to take the issue to the Warden's forum after the hearing on his first mail rejection. This does not, however, excuse Siggers from having

5

to comply with the published administrative rules, which require prisoners to contest their mail rejections by first requesting a hearing and then, if they do not agree with the result of the hearing, by filing a grievance. See id. Furthermore, the Warden's forum was not the appropriate venue for Siggers to challenge the rejection of his mail because the Warden's forum was only meant to address problems that existed within the general population as opposed to individual grievances. See MDOC policy directive 04.01.150(L); doc. 22, exh. 2 at Warden's Forum Agenda September 2005 (stating that the issue relating to the mail room's rejection of legal mail sent between prisoners "appears . . . to be a personal issue which is inappropriate to be reviewed in this medium").

Finally, Siggers claims that he did not need to file grievances with respect to the mail rejections that occurred following his September 16, 2006, grievance because any additional grievances would have been rejected as duplicative. This argument fails because, as the Sixth Circuit has noted, "If [the prisoner] had filed a grievance that was denied as duplicative he would have exhausted administrative remedies and been permitted to file a complaint. However, he may not merely assume that a grievance would be futile and proceed directly to federal court with his complaints." Wells v. Neva, 234 F.3d 1271 (Table), 2000 WL 1679441 (6th Cir. 2000). Accordingly, Siggers' claim that any subsequent grievances would have been rejected as duplicative does not excuse him from properly exhausting his claims by filing the required grievances.

*2. September 16, 2006 grievance*

Siggers filed a grievance on September 16, 2006, complaining that various acts were both violations of prison policy and being committed to retaliate against him for exercising his rights. This grievance was timely under the prison's rules, however, only as to the September 12, 2006, rejection of Siggers' mail. See MDOC policy directive 03.02.130(R) and (X). Accordingly, the grievance only properly exhausted Siggers' administrative remedies as to this mail rejection. See Woodford, 548 U.S. at 93.

In addition, this grievance only exhausts Siggers' claim to the extent that his claim is based on allegations against Campbell and Jackson.[1] The September 16, 2006, grievance states that Siggers received a notice from Campbell regarding the September 12, 2006, rejection of his mail, and that when Siggers spoke with Jackson about the mail rejection, Jackson agreed with Campbell. The grievance does not make any allegations against either Minton or Caruso relating to the September 12, 2006, mail rejection. As such, the grievance only exhausts Siggers' claims that both are against Campbell and Jackson and relate to the September 12, 2006, rejection of Siggers' mail.

*3. Major misconduct tickets*

Siggers claims that the magistrate judge erred in finding that he failed to exhaust his administrative remedies with respect to his October 31, 2005, major misconduct violation. Siggers asserts that he exhausted his administrative remedies by having a

---

[1] Defendants do not object to the magistrate judge's recommendation that this Court find that Siggers' September 16, 2006, grievance exhausted his September 12, 2006, mail rejection claim against Campbell.

7

hearing and requesting a rehearing. Defendants, however, assert that Siggers failed to exhaust his administrative remedies because he did not file a grievance.

MDOC policy directive 03.03.105(L) and (DDD) indicates that a prisoner charged with a major misconduct violation is entitled to a formal hearing and, if the prisoner would like to appeal the outcome of that hearing, the prisoner may submit a request for rehearing. The record demonstrates that a hearing was held regarding Siggers' October 31, 2005, major misconduct ticket, and Defendants have acknowledged that Siggers requested rehearing. (See doc. 22 at 10 n.33).

Defendants' contention that Siggers also needed to file a grievance in order to exhaust his administrative remedies is belied by the prison's response to Siggers' April 8, 2007 grievance, which related to a March 21, 2007 major misconduct ticket against him. The prison denied Siggers' grievance because "decisions made by a Hearing Officer on Minor and Major Misconducts, [among other things], and issues that are directly related to the hearing process are nongrievable. Your avenue of recourse is through the Request for Rehearing process . . . and not through the prisoner grievance process." (Doc. 23, exh. S-2). Accordingly, because Siggers had hearings and submitted requests for rehearing after both his October 31, 2005, and March 21, 2007, major misconduct violations, he exhausted his administrative remedies with respect to those major misconduct tickets.

Nevertheless, during these hearings, Siggers did not exhaust the issues he is raising in the present suit. In the present suit, Siggers alleges that the misconduct tickets were issued in retaliation for his exercise of his constitutional rights. (See, e.g., doc. 23 at 5 (stating, in response to Defendants' motion to dismiss, that his claims in

8

this suit relating to the major misconduct tickets involve "the injury he suffers as a result of Defendant's retaliation, not the judgment of the state disciplinary proceeding"). In order to have exhausted such retaliation claims, Siggers must have indicated that he was complaining of retaliation when he exhausted his administrative remedies at the prison. See Garrison v. Walters, 18 Fed. Appx. 329, 331 (6th Cir. 2001) (finding a failure to exhaust a retaliation claim under § 1983 where the plaintiff's grievance "did not state any facts that would have indicated that he was grieving [the defendant's] alleged retaliatory conduct"); see also Jones v. Bock, 549 U.S. 199, 219 (2007) (indicating that the primary purpose of exhaustion is to alert prison officials to a problem).

The evidence concerning what issues Siggers raised at the hearing on his October 31, 2005, misconduct ticket indicates that Siggers submitted "a statement" and that Siggers attempted to explain why he had committed the acts resulting in the major misconduct ticket. At the hearing on Siggers' March 21, 2007, misconduct ticket Siggers declined to make a statement. As such, there is no evidence that Siggers complained of retaliation during either of these hearings. Therefore, although Siggers complied with the procedures for exhausting his administrative remedies as to these misconduct tickets, he did not exhaust the retaliation claims he now raises because he never specifically complained of retaliation during the hearings on the major misconduct tickets. See id.

*4. April 8, 2007 grievance*

Siggers submitted a grievance on April 8, 2007, which complained that Campbell and Minton had conspired to deprive him of his constitutional rights by submitting false misconduct reports and by failing to follow proper policy and procedure. As previously discussed, this grievance was rejected as nongrievable because Siggers' avenue for recourse was the hearing and request for rehearing process.

There is no evidence that Siggers pursued this grievance through Step II or Step III of the grievance process, as is required under the prison's grievance policy. See MDOC policy directive 03.02.130(R). Accordingly, Siggers did not properly exhaust his administrative remedies with respect to this grievance.[2] See Woodford, 548 U.S. at 93.

### B. Personal involvement of Jackson

The Court agrees with the magistrate judge's finding that Siggers has not alleged that Jackson, the prison's warden, had sufficient personal involvement in the September 12, 2006, mail rejection to be liable under § 1983.

Under § 1983,

> liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. *At a minimum, a § 1983 plaintiff must show that a supervisory official at least*

---

[2] In addition, it is worth noting that even if this grievance had been pursued through Step III of the grievance process, it would not have exhausted Siggers' present retaliation claim that the major misconduct ticket was given to retaliate against Siggers because Siggers did not complain of retaliation in the grievance. See Garrison v. Walters, 18 Fed. Appx. at 331.

> *implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.*

Taylor v. Michigan Dep't of Corrections, 69 F.3d 76, 81 (6th Cir. 1995) (quoting Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984)). "Supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act. Rather, the supervisors must have actively engaged in unconstitutional behavior." Gregory v. City of Louisville, 444 F.3d 725, 751 (6th Cir. 2006) (quotation and citation omitted).

Siggers alleges that he spoke to Jackson and that Jackson indicated that he agreed with Campbell's rejection of the mail. This falls short of active engagement in the allegedly unconstitutional behavior because Jackson did not perform any act that encouraged the mail rejection. Furthermore, it cannot be said that Jackson knowingly acquiesced in the mail rejection because, after Jackson indicated that he agreed with Campbell, he went on to advise Siggers to obtain clarification by filing a grievance. Accordingly, it appears that Jackson did nothing more than indicate that he believed the mail rejection was proper and that Siggers should file a grievance in order to obtain a formal determination on the matter.[3] This falls short of either active engagement or knowing acquiescence in the act and, therefore, does not constitute the level of personal involvement required for liability under § 1983. See id.; Taylor, 69 F.3d at 81.

---

[3] The fact that Siggers raised the mail rejections issue before Jackson at the Warden's forum also does not indicate that Jackson had the required personal involvement because Jackson merely determined that Siggers' challenges to his mail rejections were not the type of issue that should be raised in the Warden's forum.

Also, as the magistrate judge found, there is no caselaw to support Siggers' claim that Jackson should not be able to offer a defense in this case because Jackson's Step II response to Siggers' September 16, 2006, grievance was untimely under MDOC rules. Therefore, the Court dismisses Siggers' claims against Jackson relating to the September 16, 2006, grievance because Jackson did not have the level of personal involvement required for him to be liable under § 1983. See Taylor, 69 F.3d at 81.

**V. CONCLUSION**

Accordingly, the magistrate judge's report and recommendation is **ADOPTED IN PART AND REJECTED IN PART**. Defendants' motion to dismiss is construed as a motion for summary judgment and **GRANTED IN PART AND DENIED IN PART.** (Doc. 22). The Court **DISMISSES** all of Siggers' claims except for Siggers' claims against Campbell relating to the September 12, 2006, mail rejection.

In addition, the magistrate judge recommended that Siggers be permitted to amend his complaint, and Siggers has filed an amended complaint, (doc. 43), without leave of the court. See FED.R.CIV.P. 15(a)(2). Because the Court is able to discern Siggers' claims from his original complaint, the Court **REJECTS** the magistrate judge's recommendation that Siggers be allowed to amend his complaint. The Clerk of the Court is **DIRECTED** to annotate the record in the ECF system to indicate that Siggers' amended complaint is **STRICKEN**. Also, because further proceedings are not needed to resolve Defendants' motion to dismiss, Siggers' motion requesting an evidentiary hearing or a pre-trial conference, (Doc. 38), is **DENIED**.

**IT IS SO ORDERED.**

                                            s/Marianne O. Battani
                                            MARIANNE O. BATTANI
                                            UNITED STATES DISTRICT JUDGE

DATED: December 10, 2008

**CERTIFICATE OF SERVICE**

     Copies of this Order were served upon Plaintiff and counsel of record on this date by ordinary mail and/or electronic filing.

                                            s/Bernadette M. Thebolt
                                            DEPUTY CLERK