UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRELL SIGGERS, #176859,

                Plaintiff,             Case No. 07-12495
                                          Honorable Marianne O. Battani
     v.                                     Magistrate Judge David R. Grand

ELLEN M. CAMPBELL, *et al.*,

                Defendants.
_____/

**<u>OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR
LEAVE TO FILE AMENDED AND SUPPLEMENTAL COMPLAINT [114]
AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO
COMPEL OR, IN THE ALTERNATIVE, FOR APPOINTMENT OF COUNSEL [119]</u>**

Before the court are *pro se* Plaintiff Darrell Siggers's Motion for Leave to File Amended and Supplemental Complaint [114] and "Motion to Compel Defendant to Produce E-Mails for Inspection Based on New Evidence, or Alternatively for Appointment of Counsel" [119]. An Order of Reference for General Case Management [109] was entered on January 5, 2012, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. §636(b).

Generally, the court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* L.R. 7.1(f). Here, the court finds that the facts and legal issues are adequately presented in the briefs and on the record and declines to hold a hearing at this time.

    **A.**     **Background**

This case's substantial procedural history is detailed in the court's contemporaneous Report and Recommendation to Deny Defendant's Motion for Summary Judgment (Doc. #123) and is hereby incorporated by reference. Additional facts relevant to the determination of the pending motions will be reiterated here to the extent necessary to provide proper context for

deciding these motions.

Plaintiff Darrell Siggers ("Siggers") is currently confined at Chippewa Correctional Facility in Kincheloe, Michigan. On June 11, 2007, Siggers filed this *pro se* prisoner civil rights complaint against Defendants Patricia Caruso, Andrew Jackson, Ellen Campbell, and Norman Minton, alleging First Amendment retaliation. (Doc. #1).

On July 27, 2011, the Sixth Circuit issued an opinion affirming the district court's dismissal of all claims against Defendants Caruso, Jackson, and Minton, but reversing the grant of summary judgment in favor of Defendant Campbell. *See Siggers v. Campbell*, 652 F.3d 681 (6th Cir. 2011). The Sixth Circuit found that the district court had erred in ruling on Campbell's summary judgment motion when Siggers had not yet received discovery materials he had requested and was entitled to receive:

> It was an abuse of discretion for the district court to deny [Siggers's motion for reconsideration], given that Siggers has never received a response to his discovery request, and in light of the obvious relevance of this discovery and the potential for it to aid his opposition to summary judgment. Even if one agrees that a hearing report on the September 12, 2006 Notice does not exist (because Siggers never requested a hearing), the rest of his discovery request is quite specific in what it seeks. With respect to the discovery he requested from Campbell, he seeks some documents that would be both easily produced and informative: (1) the hearing reports regarding the September 6, 2005 and September 29, 2006 Notices; and (2) "any e-mails, memo's or any other correspondence written by you, or to you concerning Plaintiff Siggers mail, or his status as a prisoner, while at the Mound Correctional Facility." His interrogatories are also quite simple; he seeks to know (1) "the names and job responsibilities of all the staff members you have worked with in the Mound Facility mailroom from 2005-2007"; (2) "the names of everyone you contacted or who contacted you, in relation to the actions you took in issuing Plaintiff Siggers mail rejection notices"; (3) "whether you have ever been reprimanded, or disciplined during your employment by the Department of Corrections. If so, state the nature of the reprimand or discipline, and when it occurred;" and (4) "whether a civil action or lawsuit has ever been filed against

2

> you in relation to your MDOC employment. If so, state how many, when, what were the causes of action and outcome."
>
> Siggers identified the discovery he sought with sufficient specificity. . . . [T]hese materials have obvious potential to provide information on which Siggers could rely in opposing summary judgment. Siggers has sought discovery from Campbell (and others) since 2007, and he has not been dilatory. The hearing reports requested may bring to light evidence regarding the motivations behind Campbell's actions. . . . Finally, as mentioned, the defendants do not appear to have otherwise been responsive to any of Siggers's discovery requests.

*Id.* at 697 (internal citations omitted). The case was remanded for further proceedings.

Following the remand, and despite the Sixth Circuit's clear pronouncement of Siggers's entitlement to responses to the requests he had served years before, the parties have continued to spin their discovery wheels somewhat. On October 11, 2011, the magistrate judge previously assigned to this case issued an opinion and order (Doc. #97) ruling on four pending motions:

- Campbell's motion for leave to take Siggers's deposition (Doc. #87) was granted.

- Siggers's motion for leave to take Campbell's deposition (Doc. #92) was granted.

- Siggers's motion for leave to supplement his original discovery requests or, alternatively, for additional interrogatories (Doc. #91) was granted. Siggers was permitted to serve four very specific interrogatories on Campbell, and she was ordered to respond in a timely fashion. (Doc. #97 at 5-6).

- Siggers's motion for appointment of counsel (Doc. #90) was denied without prejudice. Notably, Siggers requested counsel, in part, to assist him with obtaining discovery, since, despite the Sixth Circuit's ruling, Campbell still had not responded to his outstanding discovery requests. (Doc. #90 at ¶5). The magistrate judge specifically indicated that Siggers could renew his request for appointment of counsel "if his complaint survives dispositive motion practice, if his case proceeds to trial or if other circumstances warranting the appointment of counsel arise." (Doc. #97 at 5).

The district court overruled Siggers's objections to that order. (Doc. #107).

While Siggers's objections were pending, he filed a "Request for Expedited Discovery" in letter form on October 24, 2011 (Doc. #100). In his "request," which was docketed as a

motion to compel, Siggers asked the court to "issue an order directing the defendants . . . to provide [him] the requested discovery materials" and to appoint counsel to assist him in securing the production of those materials. (*Id.*). In that motion to compel, Siggers again sought responses to both his 2007 discovery requests and his supplemental interrogatories, noting that the Mound Correctional Facility was scheduled to close by January 7, 2012, and stating that if the materials housed there were "not produced expeditiously, they will be forever lost or destroyed . . . ." (*Id.*). Siggers's motion also sought the appointment of counsel, which he asserted "would expedite and facilitate" the gathering and production of the requested materials. (*Id.*). On December 2, 2011, this court issued an order granting Siggers's motion to compel responses to his 2007 discovery requests, as well as his four supplemental interrogatories (which had been explicitly authorized in the prior magistrate judge's October 11, 2011 order (Doc. #97)). (Doc. #105). Campbell was directed to respond to these discovery requests no later than January 6, 2012. (Doc. #105 at 5-6). At the same time, this court again denied without prejudice Siggers's request for appointment of counsel, indicating that he could renew that motion "if future circumstances warrant it." (*Id.* at 7).

On December 14, 2011, Siggers filed a motion to compel or, alternatively, for a show cause hearing, acknowledging that Campbell had provided responses to his discovery requests on December 5, 2011, but asking the court to compel production of (a) certain "e-mails from the MDOC data base"; and (b) a copy of Campbell's "insurance agreement, and the name and address of her insurance provider." (Doc. #106 at 5). On January 10, 2012, this court issued an order denying Siggers's motion to compel production of the requested e-mails (because Campbell already had produced what she could, and affirmatively denied the existence of any relevant e-mails within her possession or control) and the requested insurance agreement

(because Campbell had stated that no such document existed). (Doc. #110 at 5-6). However, the court explicitly noted that, with respect to the "e-mails from the MDOC data base" sought by Siggers, the denial of his motion to compel "does not preclude him from attempting *to subpoena* relevant documents" from the Michigan Department of Corrections. (*Id.* at 5, fn. 1) (emphasis added). On January 19, 2012, Siggers filed objections to this court's order (Doc. #112), which the district court overruled on January 27, 2012 (Doc. #113).

### B. The Instant Motions

On February 14, 2012, the day before the dispositive motion cutoff in this case, Siggers filed a 33-page, 143-paragraph "Amended and Supplemental Complaint Reinstating Norman Minton and Andrew Jackson as Defendants Based on Evidence Produced in Discovery Materials," along with a Motion for Leave to File Amended and Supplemental Complaint.[1] (Doc. #114). In his motion for leave, Siggers seeks permission to amend his complaint to add new claims against Campbell arising out of events occurring in August of 2011, and to reinstate previously dismissed claims against Minton and Jackson based on events occurring in 2006 and 2007. (*Id.*). On February 24, 2012, Defendants filed a response to this motion (Doc. #116), and on March 2, 2012, Siggers filed a reply (Doc. #118).[2]

Then, on April 23, 2012, Siggers filed a "Motion to Compel Defendant to Produce E-Mails for Inspection Based on New Evidence, or Alternatively for Appointment of Counsel." (Doc. #119). Siggers asserts that, following the court's denial of his prior motion to compel

---

[1] Siggers's motion for leave was appended to his "Amended and Supplemental Complaint" as an unlabeled exhibit falling between Exhibit Z-8 and Exhibit Z-10. (Doc. #114-2 at 5-7).

[2] In the meantime, on February 15, 2012, Campbell filed a Motion for Summary Judgment as to Siggers's only remaining claim – for First Amendment retaliation arising out of her rejection of his legal mail on September 12, 2006. (Doc. #115). Siggers filed a timely response. (Doc. #117). As noted above, that motion is addressed in a separate Report and Recommendation. (Doc. #123).

5

(Doc. #110), he sent, through an associate, a Freedom of Information Act ("FOIA") request to the Michigan Department of Corrections ("MDOC"), requesting production of the e-mails at issue. In response, Siggers received a letter indicating that because the Mound Correctional Facility had closed, the e-mails he requested would have to be restored, at an estimated cost of $250,000. (Doc. #119 at Ex. A). Siggers again asks this court to compel Campbell to produce the requested documents or, in the alternative, to appoint him counsel to assist with obtaining such documents. (Doc. #119). On May 7, 2012, Campbell filed a response brief (Doc. #120), and on May 21, 2012, Siggers filed a reply (Doc. #121).

    **C.**    **Analysis**

        *1.*    *Legal Standards Applicable to Siggers's Motion for Leave to File Amended and Supplemental Complaint [114]*

In Siggers's Motion for Leave to File Amended and Supplemental Complaint, he "requests leave to file an amended complaint to reinstate parties, and to amend and add supplemental claims," (Doc. #114-2 at 5), requests the court will consider in turn.

Ordinarily, a court should freely grant leave to amend a complaint when justice so requires. *See* Fed. R. Civ. P. 15(a)(2). As the Supreme Court has held:

> In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. – the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962). Nonetheless, *Foman* "makes clear there are certain situations in which it is appropriate to deny leave to amend," including circumstances where amendment would be futile. *Harrison v. Burt*, 2008 WL 4058288 (E.D. Mich. Aug. 28, 2008). Amendment is futile when the proposed amendment fails to state a claim upon which relief can be granted and, thus, is subject to dismissal under Fed. R. Civ. P. 12(b)(6). *Id.* at *2.

Similarly, the federal rules provide that, "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). As the plain language of the rule indicates, "supplemental pleadings, not amended pleadings, are intended to cover matters occurring after the original complaint was filed." *Harrison*, 2008 WL 4058288 at *1 (internal citations omitted). However, the same standard of review and rationale that apply to amending a claim under Rule 15(a) apply to supplementing a claim:

> [J]ustice does not require leave to supplement "if there has been undue delay, bad faith, dilative motive, or repeated failure to cure the deficiency by amendments previously allowed." Further, leave to supplement should also not be granted if the supplemental complaint would result in undue prejudice to the opposing party or if the supplemental complaint would be futile.
>
> When amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier. While delay alone does not justify denial of a motion, "the party seeking to amend should 'act with due diligence if it wants to take advantage of [Rule 15's] liberality.'"

*Pasley v. Caruso*, 2012 WL 994771 (E.D. Mich. Feb. 10, 2012) (internal citations omitted).

### 2. *Siggers's Request for Leave to Amend His Complaint Will be Denied*

In Siggers's motion, he indicates that he is seeking to amend his complaint to "reinstate" claims previously asserted (and dismissed) against Andrew Jackson (Warden of the Mound Correctional Facility) and Norman Minton (a Lieutenant at the Mound facility). (Doc. #114-2 at 7, ¶11). Specifically, Siggers alleges that Jackson knowingly violated his constitutional rights by permitting Campbell to reject his legal mail on September 12, 2006, despite the fact that – according to Siggers – this rejection was contrary to MDOC policy. (Doc. #114 at 11, 28-29, ¶¶33, 127-33). In other words, Siggers alleges that by "complicity and acquiescence in the

7

actions of Defendants Campbell and Minton," Jackson retaliated against him in violation of the First Amendment. (*Id.* at 32, ¶143). Siggers also asserts that Minton retaliated against him, in violation of 42 U.S.C. §1983, by unlawfully intercepting and opening Siggers's outgoing letter on October 31, 2005, and subsequently issuing Siggers an "attempted smuggling" misconduct report based on the contents of that letter. (*Id.* at 12-14, 32, ¶¶38-54, 142).

The court has already considered and rejected both of these proposed claims. Siggers's claim that Minton retaliated against him by issuing him the October 31, 2005 major misconduct violation was dismissed because it was not properly exhausted. (Doc. #46 at 8-9). The court noted that Siggers alleged in his lawsuit that "the misconduct tickets were issued in retaliation for his exercise of his constitutional rights." (*Id.* at 8). Because there was no evidence that Siggers complained of retaliation during the course of the administrative grievance process, however, the court concluded that, ". . . although Siggers complied with the procedures for exhausting his administrative remedies as to these misconduct tickets, he did not exhaust the retaliation claims he now raises because he never specifically complained of retaliation during the hearings on the major misconduct tickets." (*Id.* at 9). The Sixth Circuit affirmed this conclusion. (Doc. #84 at 16-17).

The new allegations against Minton contained in Siggers's proposed amended complaint do not alter the analysis whatsoever: Siggers still alleges that Minton retaliated against him for exercising his First Amendment rights, but he does not (nor can he) allege that he raised this issue during the administrative grievance process. As the court previously held, the claim has therefore not been properly exhausted.

Siggers's attempt to amend his complaint to re-assert a claim against Warden Jackson for his role in Campbell's September 12, 2006 rejection of his legal mail is similarly deficient.

(Doc. #114 at 11, 32, ¶¶33-34, 142). The district court previously held that Jackson did not have "sufficient personal involvement" in this mail rejection to be held liable under §1983:

> Siggers alleges that he spoke to Jackson and that Jackson indicated that he agreed with Campbell's rejection of the mail. This falls short of active engagement in the allegedly unconstitutional behavior because Jackson did not perform any act that encouraged the mail rejection. Furthermore, it cannot be said that Jackson knowingly acquiesced in the mail rejection because, after Jackson indicated that he agreed with Campbell, he went on to advise Siggers to obtain clarification by filing a grievance. Accordingly it appears that Jackson did nothing more than indicate that he believed the mail rejection was proper and that Siggers should file a grievance in order to obtain a formal determination on the matter. This falls short of either active engagement or knowing acquiescence in the act and, therefore, does not constitute the level of personal involvement required for liability under § 1983.

(Doc. #46 at 10-11). The Sixth Circuit affirmed this ruling. (Doc. #84 at 18-19).

Siggers's proposed amended/supplemental complaint does not contain any substantially new allegations as to the level of Jackson's personal involvement; it merely alleges that, although Jackson might have been aware of the "Stapleton Memorandum,"[3] he believed Campbell followed proper policy in rejecting Siggers's mail. (Doc. #114 at 11, ¶33). Even if true, this supposed new allegation does not change the district court's previous ruling that "Jackson did nothing more than indicate that he believed the mail rejection was proper and that Siggers should file a grievance in order to obtain a formal determination on the matter." (Doc. #46 at 11).

For all of these reasons, permitting Siggers to amend his complaint to reinstate claims against Jackson and Minton would be futile, and the court will deny his motion to amend.[4]

---

[3] The "Stapleton Memorandum" is an October 24, 2002 memorandum to all wardens from Richard Stapleton, Administrator of MDOC's Office of Policy and Hearings, that attempts to clarify when prisoners can receive through the mail legal documents in which another prisoner is identified as a party. (Doc. #1 at Ex. B).

[4] It also appears that Siggers seeks to reinstate his conspiracy claim against Campbell and

9

*3.    Siggers's Request for Leave to Supplement His Complaint Will be Denied*

Siggers also seeks leave to supplement his complaint to add a claim arising out of actions allegedly taken by Campbell in August 2011. Specifically, Siggers asserts that after the Sixth Circuit issued its opinion in this case on July 27, 2011 (Doc. #84), Campbell "unlawfully intercepted and failed to forward the Court's decision" to him. (Doc. #114 at 25, ¶114). Siggers alleges that because he did not receive the Sixth Circuit's decision in a timely manner, he was deprived of the opportunity to seek reconsideration. (*Id.* at ¶115). Campbell argues that Siggers should not be permitted to supplement his complaint to add a new claim arising out of this alleged action because his request is both untimely[5] and futile. (Doc. #116 at 5-7).

A review of certain admissions contained in Siggers's proposed Amended/Supplemental Complaint makes clear that his request to supplement should be denied on futility grounds, as he did not properly exhaust the proposed supplemental claim. The Prison Litigation Reform Act ("PLRA") states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). The Supreme Court has held that this "exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Proper exhaustion requires

---

Minton. He asserts that the Sixth Circuit erred in holding that he failed to exhaust this claim. (Doc. #118 at 3). Both the district court and the Sixth Circuit have already rejected Siggers's claim that he need not exhaust a conspiracy claim, and the law he cites does not alter this analysis, so such a proposed amendment would be futile.

[5] With respect to timeliness, Campbell argues that the events that occurred in August 2011 "have, at best, a tangential connection to the events described in [Siggers's] initial Complaint," and that allowing Siggers to supplement his complaint at this late stage would require reopening discovery. (Doc. #116 at 5). Campbell also argues that, because of its timing, Siggers's motion is unduly prejudicial to Campbell because it might allow him "to circumvent the Defendants' dispositive motion." (*Id.* at 6). Because the court finds that the proposed amendment should be denied as futile, it need not address these arguments.

"compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. As the *Woodford* court explained:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . . For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

*Id.* at 95. Thus, "an untimely or otherwise improper grievance, even though appealed through all steps of a grievance procedure, does not fulfill the PLRA exhaustion requirement." *Fuqua v. Straub*, 2009 WL 2602427 (E.D. Mich. Aug. 19, 2009). In determining whether the plaintiff has properly exhausted his claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Block*, 549 U.S. 199, 200 (2007).

MDOC Policy Directive 03.02.130 (effective July 9, 2007) (the "Directive") (available at www.michigan.gov/documents/corrections/03_02_130_ 200872_7) sets forth the applicable grievance procedures that must be followed for a prisoner to properly exhaust his claims. First, an inmate must "attempt to resolve" the issue with the staff member involved within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his control. Directive at ¶P. If that does not resolve the issue, the inmate may proceed to Step I of the grievance process by submitting a completed grievance form to the prison's designated Step I Grievance Coordinator within five business days of the attempt to resolve the

issue with appropriate staff. *Id.* at ¶¶P, V. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by completing and sending Form CSJ–247B to the designated Step II Grievance Coordinator within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶BB. If the inmate is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III; this must be done within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶FF.

Siggers alleges that, on August 24, 2011, he learned that the Sixth Circuit had issued its Opinion in this case on July 27, 2011, but that he had not received it. (Doc. #114 at 19, ¶¶85-86). That same day, he sent a letter to Campbell in an attempt to resolve the issue, inquiring why he had not received a copy of the Opinion and indicating that if he did not receive a response from her within thirty (30) business days, he would file a grievance. (*Id.* at Ex. Z-4). According to Siggers, Campbell did not respond to this letter. (*Id.* at 19, ¶88). On October 2, 2011, Siggers filed a Step I grievance against Campbell, alleging "retaliation, harassment, misfeasance and stealing/tampering with [his] legal mail." (*Id.* at Ex. Z-5). Siggers's grievance was rejected at Step I because it was untimely. (*Id.*). On November 1, 2011, Siggers filed a Step II grievance. (*Id.* at Ex. Z-6). On appeal at Step II, Siggers attempted to explain his delay in filing at Step I:

> He states that he waited so long because he sent a letter to Mrs. Campbell asking her why she did not forward his mail to him. The grievant also states that he gave Mrs. Campbell 30 days to respond to that letter. He states that he was following policy by trying to resolve the issue without filing a grievance. When he did not get a response from Mrs. Campbell he then filed.

(*Id.* at Ex. Z-7). Siggers's grievance was denied at Step II because:

> . . . As far as the timelines of the grievance several months have past before the grievant filed. Even though the grievant allowed 30 days for a

written response by Mrs. Campbell he still did not file a grievance for another month.

(*Id.*). Siggers appealed his grievance to Step III, asserting that he had given Campbell thirty (30) *business* days – not merely 30 days – to respond to his letter and, therefore, his grievance had been timely filed at Step I. (*Id.* at Ex. Z-6). The record does not contain a Step III response.

There is no dispute that Siggers did not file his Step I grievance within five business days after sending his August 24, 2011 letter to Campbell, which was his "attempt to resolve" the issue with the involved staff member. Directive at ¶P. Siggers has argued that, because he gave Campbell thirty (30) business days to respond to his letter – and then filed his Step I grievance within five business days of that deadline – his grievance was timely. (Doc. #114 at Ex. Z-6). The court disagrees.

As this court has previously recognized, the Directive "essentially gives the prisoner seven business days to file his Step I grievance." *Boling v. Correctional Medical Servs.*, 2007 WL 3203133, at *5 (E.D. Mich. Oct. 31, 2007). In this case, Siggers waited more than a month after becoming aware of Campbell's alleged interference with his mail (on August 24, 2011) to file his Step I grievance (on October 2, 2011). Siggers's argument that his Step I grievance was timely filed within five business days of *the deadline he gave to Campbell* to respond to his letter is unavailing. If a prisoner could unilaterally extend the timelines for filing grievances simply by arbitrarily selecting an expansive response time, those timelines would be meaningless.

In a case with a similar delay between the submission of a letter to the involved staff member and the filing of a Step I grievance, this court reached the same conclusion, saying:

> Magistrate Judge Pepe found "Plaintiff wrote to Defendant Curtis on May 11, 2006, indicating that he had completed the required therapy program. When he did not hear back, he filed this grievance on June 20, 2006. Because Plaintiff did not file his grievance at Step I within five days of his informal attempt at resolution (the letter to Warden Curtis) his grievance is untimely." Plaintiff argues that the time requirements were untenable, as

13

> he was housed in a different facility than that of Defendant Curtis. Nevertheless, Plaintiff could have preserved his claim by filing his Step I grievance within the five days allowed, and dropped the claim later if Defendant Curtis responded. As such, this Court agrees and the claim is appropriately DISMISSED.

*Boone v. Fighter*, 2008 WL 880208 (E.D. Mich. Mar. 31, 2008) (internal citations omitted). Thus, Siggers's failure to file his Step I grievance within five business days of his informal attempt to resolve the issue with Campbell renders his grievance untimely. *Id.*; *Boling*, 2007 WL 3203133, at *5. As such, Siggers's proposed supplemental claim against Campbell is futile because he did not properly exhaust it. Accordingly, the court will deny Siggers's motion to supplement.

### 4. *Siggers's Motion to Compel Production of E-Mails [119] Will be Denied*

Also before the court is Siggers's "Motion to Compel Defendant to Produce E-Mails for Inspection Based on New Evidence." (Doc. #119). As set forth above, Siggers asserts in his motion that, following the court's denial of his prior motion to compel (Doc. #110), he sent (through "an associate," apparently Mary Henning) a FOIA request[6] to MDOC, seeking the e-mails he previously had requested from Campbell, and which Campbell claimed she did not possess and could not personally obtain. (Doc. #119 at 2, Ex. A).[7] The MDOC's response indicated that the "request for emails is granted as to nonexempt documents," but that because "the Mound Correctional Facility is closed, the Department of Technology, Management and Budget (DTMB) would have to restore the e-mails that fall within the scope of your request at an estimated cost of $250,000…Please send your 50 per cent good faith deposit in the amount of

---

[6] Despite both this court and the district court indicating that a Rule 45 subpoena was the "appropriate means" for Siggers to request the e-mails he seeks from a non-party (Doc. #110 at 5; Doc. #113 at 3), he proceeded by way of a FOIA request, purportedly because he could not effectuate proper personal service of a subpoena on the MDOC. (Doc. #119 at 5, fn. 2).

[7] Siggers did not provide the court with a copy of his actual FOIA request, so its precise form is not clear.

$125,000 … [and] we will begin processing this request." (*Id.* at Ex. A).

Henning apparently appealed the MDOC's initial response to the DTMB by way of a letter (which was not provided to the court). (Doc. #121 at 4). In turn, the DTMB responded:

> The disclosure denial is reversed with regard to existing, nonexempt records determined to fall within the scope of your request. The records are limited to those in the e-mail boxes of current Department of Corrections employees who worked at the Mound Correctional Facility from 2005-2007. The records do not include those which may have been archived…which would have to be requested from the Department of Corrections. The estimated cost of processing your request is $3,430.00.

(*Id.*).

Siggers again asks this court to compel Campbell to produce the e-mails. In response, Campbell argues that Siggers's motion to compel should be denied because it was filed after the close of discovery, because it seeks the same material previously sought and denied by the court, and because his exclusive remedy to challenge the MDOC's response to his request would be a FOIA lawsuit filed in state court. (Doc. #120 at 4-5).

The court is not overly concerned by the timing of Siggers's motion. This case is already many years old, and it appears Siggers has been reasonably diligent throughout in attempting to obtain the discovery that the Sixth Circuit has held he is entitled to. On the other hand, Campbell's failure to promptly provide that discovery after the Sixth Circuit's ruling caused at least some delay with respect to finalizing discovery in this case. In turn, Siggers sought the materials on an emergent basis back in October of 2011 due to the then-impending closure of the Mound Correctional Facility, which the MDOC is now asserting as a basis for its inability to produce the materials, at least without Siggers paying a substantial fee.[8]

---

[8] The court does not find the cost issue to be compelling. Although the MDOC is a separate legal entity from Campbell, they are both represented by the Michigan Attorney General's office. Between that and what the court presumes were Campbell's good-faith efforts to directly obtain

Nevertheless, Campbell is the only defendant to this litigation, and her other arguments opposing Siggers's motion to compel are well taken. There appears to be no dispute that, in his FOIA request, Siggers seeks production of documents from a non-party, MDOC. Fed. R. Civ. P. 34(c), which governs the production of documents, states, "As provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection." Rule 45 governs subpoenas and provides direction as to their form, issuance, and service. Fed. R. Civ. P. 45. Thus, the appropriate method by which to obtain the documents Siggers seeks is through compliance with Rule 45. This court simply does not have the authority to compel a nonparty, such as MDOC, to respond to what the court presumes was a Michigan FOIA request and, as such, Siggers's motion to compel must be denied.[9]

　　　　　5.　　*The Court Will Grant Plaintiff's Motion for Appointment of Counsel [119]*

Although the court lacks authority over the MDOC at this juncture with respect to Siggers's FOIA request, it does have discretion to grant his alternative request for the appointment of counsel, "even if only for the sole and limited purpose of obtaining the requested e-mails." (Doc. #119 at 4). Campbell takes no position on this request, recognizing that this decision is a discretionary one for the court. (Doc. #120 at 5). *See Henry v. City of Detroit Manpower Dep't*, 763 F.2d 757, 760 (6th Cir.1985).

Unlike criminal cases, there is no constitutional or statutory right to the appointment of

---

the e-mails from the MDOC, the MDOC has long been aware that Siggers would be seeking the e-mails. Moreover, the court acted expeditiously in ruling on Siggers's first motion to compel specifically to avoid any increased burden or cost that might be associated with retrieving the e-mails after the Mound Facility's closing.

[9] As Campbell correctly notes, Michigan's FOIA laws provide a procedure by which the requesting party can challenge a denial, by either an administrative appeal or by commencing an action in circuit court. MCL 15.240(a) and (b). Having already made an administrative appeal to no avail, it would appear that Siggers's only remaining option to further pursue his FOIA request would be to commence a circuit court action.

counsel in civil cases. Indeed, counsel typically is appointed in prisoner civil rights cases only where exceptional circumstances exist, or in certain cases, only after a motion to dismiss or for summary judgment has been decided. *See Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003); *Siggers v. Bailey*, 2009 WL 3185494 (E.D. Mich. Oct. 2, 2009). In order to make the determination, the court considers the type of case involved, the plaintiff's ability to represent himself, as well as the complexity of the case, and whether the claims being presented are frivolous or have a small likelihood of success. *See Siggers*, 2009 WL 3185494 at *1.

Given this court's contemporaneous recommendation that Campbell's motion for summary judgment be denied (Doc. #123), and given the difficulties Siggers has had in obtaining the e-mails that the Sixth Circuit has ruled are relevant and should be provided to him, the court finds that it is appropriate to appoint counsel for the limited purpose of attempting to obtain that discovery. In that regard, the court notes the present lack of clarity as to what e-mails exist, their location(s) (*e.g.*, on servers, backup tapes, individual computers, etc.), and what would be required to search for and produce them to Siggers.

In response to Siggers's FOIA request, the MDOC first claimed that it would produce the requested materials – but only if Siggers paid the whopping charge of $250,000. (Doc. #119 at Ex. A). Yet, after Siggers's appeal, the DTMB wrote that the MDOC's "disclosure denial is reversed," dramatically reduced the proposed fee, and indicated that Siggers would need to request "archived" documents "from the MDOC." (Doc. #121 at 4). That response is perplexing in a few respects. First, the MDOC had not issued a "disclosure denial," but had indicated that Siggers's "request for emails is granted…" (Doc. #119 at Ex. A). Second, the proposed cost of producing responsive documents purportedly declined almost 99% (though it is still not clear what documents would be produced for that charge). Third, it is unclear what is meant by the

17

term "archived" e-mails and why the DTMB is referring Siggers back to the MDOC for their production when his original FOIA requests for those materials had already been served on that entity. Siggers contends (although on what basis it is not clear) that the e-mails do not need to be "restored," but can merely be searched for in the MDOC's database (or presumably on other employees' computers who Defendant Campbell does not control). (Doc. #119 at 3).

In sum, the lack of clarity surrounding these issues coupled with the Sixth Circuit's ruling that Siggers is entitled to the e-mails leads the court to conclude that it is appropriate to appoint counsel to assist him. Accordingly, the court will grant Siggers's motion for appointment of counsel for the limited purpose of assisting him in obtaining the e-mails described herein.[10]

### III. CONCLUSION

For the reasons set forth below, Plaintiff's Motion for Leave to File Amended and Supplemental Complaint [114] is **DENIED**, and Plaintiff's "Motion to Compel Defendant to Produce E-Mails for Inspection Based on New Evidence, or Alternatively for Appointment of Counsel" [119] is **GRANTED IN PART** to the extent it seeks the appointment of counsel to assist him in obtaining the e-mails described herein, and **DENIED IN PART** to the extent it seeks an order compelling Defendant Campbell to produce those materials. Other than as stated in this Opinion and Order, this action shall be stayed while the court attempts to secure counsel to assist Plaintiff.

Dated: June 13, 2012  
                       s/ David R. Grand  
                       DAVID R. GRAND  
                       UNITED STATES MAGISTRATE JUDGE

---

[10] While the court will stay the proceedings in this case while it attempts to locate counsel to assist Siggers, he may continue to attempt to obtain the e-mails at issue through any proper means, including, if he is able, by third-party subpoena. The parties and any of their counsel are encouraged to cooperate in those efforts to the extent practicable, and to notify the court if they are able to get the e-mails to Siggers which would obviate the need for appointment of counsel.

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties' attention is drawn to Fed. R. Civ. P. 72(a), which provides a period of fourteen (14) days from the date of receipt of a copy of this order within which to file objections for consideration by the district judge under 28 U.S. C. §636(b)(1).

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 13, 2012.

                                                s/William Barkholz for Felicia M. Moses
                                                FELICIA M. MOSES
                                                Case Manager