UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRELL SIGGERS, #176859,

                Plaintiff,               Case No. 07-12495
                                                          Honorable Marianne O. Battani
      v.                                                  Magistrate Judge David R. Grand

ELLEN M. CAMPBELL, *et al.*,

                Defendants.
_____/

**REPORT AND RECOMMENDATION TO DENY DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE [115]**

Before the court is Defendant Ellen Campbell's Motion for Summary Judgment [115]. An Order of Reference for General Case Management [109] was entered on January 5, 2012, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. §636(b).

Generally, the court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* L.R. 7.1(f). Here, the court finds that the facts and legal issues are adequately presented in the briefs and on the record and declines to order a hearing at this time.

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant's Motion for Summary Judgment [115] be **DENIED WITHOUT PREJUDICE**.

**II.    REPORT**

    **A.    Procedural History**

Much of this case's procedural history was described in the court's October 11, 2011, December 2, 2011, and January 10, 2012 opinions and orders (Docs. #97, 105, 110). However, facts relevant to the pending motion will be reiterated herein.

*1. Background*

Plaintiff Darrell Siggers is currently confined at Chippewa Correctional Facility in Kincheloe, Michigan. On June 11, 2007, Siggers filed a *pro se* prisoner civil rights complaint against Defendants Patricia Caruso, Andrew Jackson, Ellen Campbell, and Norman Minton. (Doc. #1). Siggers alleges violations of his First Amendment rights to free speech and to be free from retaliation for filing a prior lawsuit (on which he prevailed), as well as violations of the Fair and Just Treatment Clause of the Michigan Constitution. (Doc. #1 at ¶¶47-51).[1]

On October 22, 2008, Siggers filed an amended complaint against Campbell, Jackson, and Minton. (Doc. #43). On August 26, 2008, the magistrate judge issued a Report and Recommendation to grant in part and deny in part a motion to dismiss the defendants had filed. (Doc. #31). On December 10, 2008, the district court issued an opinion and order accepting in part and rejecting in part that recommendation; the district court dismissed all of Siggers's claims except for those against Campbell relating to an incident on September 12, 2006, when she rejected a piece of Siggers's incoming mail.[2] (Doc. #46 at 12). Moreover, the court directed the Clerk of the Court to strike Siggers's amended complaint. (*Id.*).[3]

At that time, Campbell was the sole remaining defendant, and Siggers's sole remaining claim related to Campbell's September 12, 2006 rejection of his legal mail. Additional discovery and summary judgment motion practice took place; Campbell and Siggers filed cross-motions

---

[1] On July 9, 2007, Siggers filed corrected copies of page twelve of his Complaint – namely, the "relief requested" section. (Doc. #4).

[2] On September 12, 2006, Campbell rejected mail sent to Siggers by another prisoner on the basis that Siggers did not have a "current, valid legal agreement with this prisoner nor does material meet the criteria of legal property allowed." (Doc. #1 at Ex. F-1). *See infra* at p. 6.

[3] On March 11, 2009, the district court entered an opinion and order denying Siggers's motion to alter or amend the judgment and/or for reconsideration. (Doc. #54). That same day, the district court overruled Defendants' objections to the magistrate judge's order vacating the discovery stay and setting the dispositive motion deadline. (Doc. #55).

for summary judgment (Doc. #s 52 and 65, respectively), and Siggers also filed a motion to delay consideration of Campbell's motion until he had received certain discovery (Doc. #56). Ultimately, on September 25, 2009, the district court granted Campbell's summary judgment motion and dismissed Siggers's complaint in its entirety. (Doc. #71).

    2.    *Sixth Circuit*

Siggers appealed the rulings against him, and on July 27, 2011, the Sixth Circuit issued an opinion affirming the district court's dismissal of all claims against Caruso, Jackson, and Minton, but reversing the grant of summary judgment in favor of Campbell. *See Siggers v. Campbell*, 652 F.3d 681 (6th Cir. 2011). The Sixth Circuit found that the district court had erred in ruling on Campbell's summary judgment motion when Siggers had not yet received discovery materials he had requested and was entitled to receive:

> It was an abuse of discretion for the district court to deny [Siggers's motion for reconsideration], given that Siggers has never received a response to his discovery request, and in light of the obvious relevance of this discovery and the potential for it to aid his opposition to summary judgment. Even if one agrees that a hearing report on the September 12, 2006 Notice does not exist (because Siggers never requested a hearing), the rest of his discovery request is quite specific in what it seeks. With respect to the discovery he requested from Campbell, he seeks some documents that would be both easily produced and informative: (1) the hearing reports regarding the September 6, 2005 and September 29, 2006 Notices; and (2) "any e-mails, memo's or any other correspondence written by you, or to you concerning Plaintiff Siggers mail, or his status as a prisoner, while at the Mound Correctional Facility." His interrogatories are also quite simple; he seeks to know (1) "the names and job responsibilities of all the staff members you have worked with in the Mound Facility mailroom from 2005-2007"; (2) "the names of everyone you contacted or who contacted you, in relation to the actions you took in issuing Plaintiff Siggers mail rejection notices"; (3) "whether you have ever been reprimanded, or disciplined during your employment by the Department of Corrections. If so, state the nature of the reprimand or discipline, and when it occurred;" and (4) "whether a civil action or lawsuit has ever been filed against you in relation to your MDOC employment. If so, state how many, when, what were the causes of action and outcome."

3

> Siggers identified the discovery he sought with sufficient specificity. . . . [T]hese materials have obvious potential to provide information on which Siggers could rely in opposing summary judgment. Siggers has sought discovery from Campbell (and others) since 2007, and he has not been dilatory. The hearing reports requested may bring to light evidence regarding the motivations behind Campbell's actions. . . . Finally, as mentioned, the defendants do not appear to have otherwise been responsive to any of Siggers's discovery requests.

*Id.* at 697 (internal citations omitted). The case was remanded to the district court for further proceedings. The parties engaged in further discovery and, on February 15, 2012, Campbell filed a Motion for Summary Judgment as to Siggers's only remaining claim – for First Amendment retaliation arising out of her rejection of his legal mail on September 12, 2006. (Doc. #115). Siggers filed a timely response. (Doc. #117).[4]

### B. Defendant's Motion for Summary Judgment [115]

Campbell argues that summary judgment is appropriate on Siggers's First Amendment retaliation claim because he did not engage in protected conduct and because there was no causal link between any protected conduct and the alleged adverse action taken against him. Campbell further argues that summary judgment is appropriate pursuant to 42 U.S.C. §1997e(e) because Siggers has not demonstrated that he suffered a physical injury.

#### 1. *Standard of Review*

Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v.*

---

[4] The day before the dispositive motion cutoff in this case, Siggers filed an "Amended and Supplemental Complaint Reinstating Norman Minton and Andrew Jackson as Defendants Based on Evidence Produced in Discovery Materials," along with a Motion for Leave to File Amended and Supplemental Complaint. (Doc. #114). Then, on April 23, 2012, Siggers filed a "Motion to Compel Defendant to Produce E-Mails for Inspection Based on New Evidence, or Alternatively for Appointment of Counsel." (Doc. #119). Both of these motions are addressed in a separate Opinion and Order. (Doc. #122).

*Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In determining whether a genuine issue of material fact exists, the court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001), *quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In response, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558, *quoting Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

    2.    *Analysis of Siggers's First Amendment Retaliation Claim*

        a.    *The Relevant Facts*

As noted, the sole remaining claim in Siggers's lawsuit relates to Campbell's September 12, 2006 rejection of mail sent to him by another prisoner, Carnell Bates. The mail in question apparently was a legal brief filed in connection with a case that concerned Bates, but which

5

Siggers claims could have aided him in the defense of his own criminal case. (Doc. #114 at Ex. Z-10, Campbell Dep. at 19-21). However, Siggers presented no evidence that Campbell knew of that supposed connection. Campbell rejected this mail pursuant to MDOC Policy Directive 04.07.112(M), which provided, in relevant part, that prisoners "shall be permitted to possess legal property," and defined "legal property" to include materials "necessary to a prisoner's pending litigation, or reasonably necessary to another prisoner's pending litigation provided there is a current, valid agreement for legal assistance with the other prisoner . . . ." Directive 04.07.112(M)(1) (effective Nov. 12, 2004). Her rejection was based on the fact that Siggers did "not have a current, valid legal agreement with this prisoner, nor [did the] material meet the criteria of legal property allowed." (Doc. #1 at Ex. F-1). Siggers wrote to Campbell shortly thereafter, contending that the Bates brief was permissible correspondence pursuant to the "Stapleton Memorandum." (Doc. #1 at Ex. C). This memorandum, dated October 24, 2002, and addressed to all MDOC wardens, was an attempt to clarify the version of Policy Directive 04.07.112(M) in effect at the time, and provided in relevant part:

> As a result of recent developments in the *Cain* case, clarification has been requested as to when a prisoner can receive through the mail motions, briefs, pleadings and similar legal documents in which another prisoner is identified as a party. Please advise mail room staff and other appropriate staff at your facility that such items fall within the definition of "legal property" contained within PD 04.07.112 "Prisoner Personal Property." These documents, if received in the mail for a prisoner at your facility, cannot be rejected solely on the basis that another prisoner is identified as a party. This is true even if there is no authorized legal assistance agreement between the prisoners involved. There must be other clear proof that the documents violate Department policy.
>
> Motions, briefs, pleadings, and similar legal documents in which another prisoner is identified as a party may not be allowed through the mail if it is apparent and can be established that they are being provided in order to circumvent the requirement that the prisoners have a current and valid legal assistance agreement. For example, an accompanying letter indicating that there is a charge for preparing the document would violate PD 05.03.116…

6

(*Id.* at Ex. B). Campbell responded that she rejected the mail "based on PD 04.07.112 Effective 11-15-04. This [the Stapleton] memo is from 2002 and does not supercede [sic] this policy." (*Id.* at Ex. C) (emphasis in original). Siggers filed a grievance challenging the rejection of his legal mail which was denied at each step of the process. As a result, Siggers filed this lawsuit.

### b. *The Applicable Legal Framework*

Under Sixth Circuit law, to establish a claim for First Amendment retaliation, brought pursuant to 42 U.S.C. §1983, the plaintiff must show that: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between the protected conduct and the adverse action – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). However, if the "defendant can show that [s]he would have taken the same action in the absence of the protected activity, [s]he is entitled to prevail on summary judgment." *Id.* at 399. Campbell argues that Siggers failed to establish the first and third elements of his claim.[5]

#### (1) Protected Conduct

First, Campbell argues that Siggers was not engaged in constitutionally protected conduct because, in receiving the mail in question, she believed he had violated a legitimate prison regulation (*i.e.*, he sought to receive legal materials from an inmate with whom he had no valid legal assistance agreement). (Doc. #115 at 6-7). According to Campbell, the Sixth Circuit has held that "if a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one." *Thaddeus-X*, 175 F.3d at 395. Campbell may have correctly stated the law, but her argument misses the mark.

---

[5] Campbell appears to concede that the rejection of Siggers's mail on September 12, 2006 constitutes an adverse action for purposes of a First Amendment retaliation claim.

7

Siggers does not contend that his alleged protected activity was receiving legal materials from another inmate (in which case an argument could be made that such activity violated PD 04.07.112(M)).[6] Rather, he asserts that he was retaliated against for filing and succeeding in his prior lawsuit against one of Campbell's co-workers at the Mound Correctional Facility, Resident Unit Manager David Barlow. (Doc. #1 at ¶¶9-10). Siggers filed his prior lawsuit on July 24, 2001, alleging that Barlow retaliated against him for filing grievances by transferring him out of the Mound Correctional Facility. *See Siggers-El v. Barlow*, 412 F.3d 693 (6th Cir. 2005), *opinion after appeal*, 433 F. Supp. 2d 811 (E.D. Mich. 2006) (Tarnow, J.). Siggers prevailed in that action in April 2006, after obtaining a jury verdict in his favor and a damages award totaling $219,000 in November 2005. *Id.* Siggers's filing and successful pursuit of his prior lawsuit against Barlow is constitutionally protected activity, satisfying the first prong of a retaliation claim. *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002).

(2) <u>Causal Link</u>

In order to establish the third element of a First Amendment retaliation claim, Siggers must establish a causal connection between the protected conduct (here, the filing of his prior lawsuit) and the adverse action at issue (the September 12, 2006 rejection of his legal mail[7]). *See Thaddeus-X*, 175 F.3d at 399. Circumstantial evidence, like the timing of events or the disparate treatment of similar individuals may, by inference, support the required showing. *See Arnett v. Myers*, 281 F.3d 552, 560-61 (6th Cir. 2002). However, the circumstantial evidence must do more than create speculation as to the required showing. *Alexander*, 576 F.3d at 558. If Siggers

---

[6] Moreover, as Siggers correctly notes, he was the *receiving* party with respect to the mail in question. Thus, one cannot conclude that he took affirmative steps to violate a prison regulation.

[7] Siggers suggests there were other similar instances of his legal mail being rejected in retaliation for his prior lawsuit, but he admits that the substance of any claims related to those particular rejections are not before the court. (Doc. #117 at 5).

raises a material question of fact as to whether his protected conduct was at least a motivating factor behind any harm, the burden of production shifts to Campbell. *Id.* at 561. If she can show that she would have taken the same action in the absence of the protected activity, she is entitled to prevail on summary judgment. *Id.*

Campbell argues that Siggers cannot establish a causal link because "he has no proof that his jury verdict against Barlow had anything to do with her mail rejection on September 12, 2006." (Doc. #115 at 7). Specifically, Campbell asserts that she had no knowledge of Siggers's prior lawsuit against Barlow until she was served with Siggers's instant complaint. (*Id.* at 7 and Ex. C, p. 61). Siggers admitted at his deposition that he has no personal knowledge that Campbell was aware of the result of his prior case. (Doc. #115 at Ex. B, Siggers Dep. at 13). Rather he showed merely that Campbell had the potential to know of it due to the fact that it was printed in various periodicals and a letter that she says she would have read had she (rather than her colleague) been on duty during the days and times when those materials passed through the mail station. (Campbell Dep. at 45-49, 59-61; Doc. #114 at Ex. O-2). Siggers did not present evidence that Campbell had actually read any of those materials, though, and Campbell unequivocally testified that she had not, and had not been aware of his prior case until well after she rejected the mail in question. (Campbell Dep. at 12-13, 47-49, 60-61). Campbell characterizes Siggers's claim that she must have known about the Barlow lawsuit as "sheer speculation" that is insufficient to survive summary judgment.

Although, for the reasons noted above, Siggers's contention does appear to be largely speculative, the court is unable to fully analyze the issue at this juncture. In its opinion and order of today's date (Doc. #122), the court granted Siggers's request to appoint counsel to assist him in pursuing limited discovery of e-mails which may bear on the question of Campbell's

9

knowledge one way or the other.[8] Consistent with the Sixth Circuit's opinion, *supra* pp. 3-4, the court believes Siggers ought to have that discovery material before addressing the causal link issue. (*Id.*). Accordingly, the court recommends denying Campbell's motion for summary judgment without prejudice as to that particular element of Siggers's retaliation claim. The court recommends giving the parties an additional opportunity to file dispositive motions on this issue, if they so choose, within thirty days after the relevant discovery material has been produced.

    *c.*    *Physical Injury*

Campbell also argues that, pursuant to the PLRA, she is entitled to summary judgment on Siggers's First Amendment retaliation claim because he did not suffer a physical injury as a result of the challenged conduct. (Doc. #115 at 8). The PLRA provides, in relevant part:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. §1997e(e). Campbell asserts that because Siggers alleged no physical injuries, his injuries "must fall into the category of mental or emotional injuries," and that "[s]ince the only possible injury Siggers can have in this case is a mental or emotional injury, this Court must dismiss his First Amendment claims." (Doc. #115 at 8, 10). Campbell oversimplifies the issue.

This court finds particularly persuasive the reasoning in the analogous case of *Meade v. Plummer*, 344 F.Supp.2d 569, 572-573 (E.D. Mich. 2004). *Meade*, like this case, involved an inmate's allegation of mail improperly withheld by prison officials. The inmate sued under 42

---

[8] Although the court makes no ruling at this time on this particular issue, it notes that Campbell's position on this point is somewhat unclear. On the one hand, she argues that she rejected the mail in question pursuant to then-existing PD 04.07.112(M), claiming that it superseded the Stapleton Memo (Doc. 114 at Ex. C; Campbell Dep. at 21, 24). On the other hand, Campbell claims to have rejected the mail pursuant to the Stapleton Memo's second paragraph (allowing mail to be rejected where a prisoner is attempting to "circumvent the requirement that the prisoners have a current and valid legal assistance agreement" as she allegedly believed was the case here, with Bates asking Siggers to do legal work for him). (Campbell Dep. at 22-23, 58).

U.S.C. §1983, claiming that the defendants' conduct violated his First Amendment rights. But, he did not allege that he suffered any physical injury. The defendants moved to dismiss, making the exact argument made here about the lack of a physical injury. The district court permitted the inmate's constitutional claim to go forward, reasoning as follows:

> The Sixth Circuit has not addressed the issue in a published opinion. However, in an unpublished decision, the court reversed the district court and allowed a prisoner to argue for nominal, compensatory, and punitive damages flowing from a violation of his First Amendment rights. *See Williams v. Ollis*, Nos. 99-2168, 99-2234, 2000 WL 1434459 at *2 (6th Cir. Sept.18, 2000) (unpublished) (citing *Canell*, 143 F. 3d at 1213). The Court cannot agree with the reasoning of courts that construe Section 1997e(e) as barring suit based on constitutional violations when no physical injury is alleged. The *Davis*[9] and *Harris* courts read the Section too broadly by construing it as a prohibition against a claim rather than the limitation on damage recovery that it plainly is….The plain language of the statute does not require dismissal of constitutional claims in which no physical injury is present, since nominal and punitive damages may be recovered in cases, such as this, where First Amendment violations are alleged.

*Id.* at 573.[10] A magistrate judge in this district recently reached a similar conclusion:

> Based on the unpublished guidance from the Sixth Circuit and the cases from the Eastern District, this court concludes that Plaintiff's First Amendment claim may go forward, even though he has not alleged or suffered a physical injury. To construe §1997e(e) as precluding First Amendment claims, when a physical injury resulting from a First Amendment violation is nearly impossible to conceive of, would

---

[9] A case cited by Campbell.

[10] In *Siggers-El v. Barlow*, 433 F. Supp. 2d 811, 816 (E.D. Mich. 2006), the district court addressed the very arguments raised here by Campbell and similarly held, albeit for different reasons, that §1997e(e) did not bar his First Amendment claims. *Id.* (holding that statute should not be applied to "allow 'prison officials to violate inmate First Amendment rights with impunity, resolute with the knowledge that First Amendment violations will almost never result in physical injuries.'") (internal citations omitted). *Cf. Meade*, 344 F. Supp. 2d at 573 ("this Court does not believe that First Amendment claims are excluded from Section 1997e(e)'s scope…Those cases premise the exclusion on the character of First Amendment claims as having compensable value even in the absence of physical *or* emotional injury. However, the Supreme Court rejected that rationale in *Memphis Community School Dist. v. Stachura,* 477 U.S. 299, 308 (1986), stating that 'the abstract value of a constitutional right may not form the basis for §1983 damages.'").

11

> unilaterally deprive prisoners of their First Amendment rights, an outcome which was undoubtedly unintended by Congress and a position that is unsustainable under the federal constitution.

*Gordon v. Collins*, 2010 WL 5464256 (E.D. Mich. Nov. 5, 2010). *See also e.g., Horacek v. Burnett*, 2008 WL 4427825 (E.D. Mich. Aug. 19, 2008).

Although some of the cases Campbell cites evidence a split in the authorities on this issue, *e.g.*, *Davis v. District of Columbia*, 158 F.3d 1342, 1348-49 (D.C. Cir. 1998) (holding that Section "1997e(e) precludes claims for emotional injury without any prior physical injury, regardless of the statutory or constitutional basis of legal wrong"), others are entirely consistent with the above analysis. For instance, Campbell relies on *Thompson v. Carter*, 284 F.3d 411 (2nd Cir. 2002), to support her position that because "§1997 precludes an award of mental or emotional damages…this Court must dismiss [Siggers's] First Amendment claims." (Doc. #115 at 8, 10). But, in actuality, *Thompson* held that because "Section 1997e(e) is a limitation on recovery of damages for mental and emotional injury in the absence of a showing of physical injury, it does not restrict a plaintiff's ability to recover compensatory damages for actual injury, nominal or punitive damages, or injunctive and declaratory relief."[11] *Id.* at 416.

Finally, because there may still be additional summary judgment motion practice, and because the parties have not specifically briefed the issue of which categories of damages are appropriate under the circumstances, the court finds that "[t]he limitation of damages is more

---

[11] Campbell also cites *Bey v. Garber*, 215 F.3d 1325 (6th Cir. 2000) and *Lucas v. Nichols*, 1999 U.S. App. LEXIS 8151 (6th Cir. 1999), as Sixth Circuit cases that support her position. However, both cases can be distinguished. In *Bey*, the "injury" was alleged humiliation, arising out of a guard laughing at the inmate while he was being strip searched, while in *Lucas*, the inmate alleged he was treated inhumanely. Although each case was dismissed in its entirety, which is contrary to the approach taken in the other cases cited above, including the Sixth Circuit case of *Williams,* 2000 WL 1434459 at *2, the difference can be largely reconciled because the specific emotional injuries allegedly suffered by Bey are unquestionably not compensable absent physical injury, and Lucas "at no time claimed any mental, emotional, or physical injury." *Lucas*, at *6.

appropriately considered at trial [should one take place], at which time Defendant[] may file a motion in limine on this issue or request a jury instruction." *Gordon*, *supra* at *3.

Accordingly, this court recommends simply denying Campbell's motion for summary judgment on §1997e(e) grounds.

### III. CONCLUSION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant's Motion for Summary Judgment [115] be **DENIED WITHOUT PREJUDICE** as to the "causal link" element of Siggers's retaliation claim. The court also recommends giving the parties an additional opportunity to file dispositive motions on that issue, if they so choose, with thirty days after the discovery material described above has been produced.

Dated: June 13, 2012                    s/ David R. Grand
                                        DAVID R. GRAND
                                        UNITED STATES MAGISTRATE JUDGE


### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th

Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 13, 2012.

s/William Barkholz for Felicia M. Moses<br>
FELICIA M. MOSES<br>
Case Manager