UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRELL SIGGERS, #176859,

      Plaintiff,    Civil Action No. 07-12495
             Honorable Marianne O. Battani
  v.          Magistrate Judge David R. Grand

ELLEN M. CAMPBELL, *et al.*,

      Defendants.
_____/

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [163] AND TO DENY
DEFENDANT CAMPBELL'S MOTION FOR SUMMARY JUDGMENT [166]**

Before the Court are cross-motions for summary judgment filed by Plaintiff Darrell Siggers and Defendant Ellen Campbell. (Docs. #163, 166). An Order of Reference for General Case Management was entered on January 5, 2012, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. §636(b). (Doc. #109).

Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* E.D. Mich. L.R. 7.1(f). Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record and declines to order a hearing at this time.

**I.  RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that both Plaintiff's Motion for Summary Judgment (Doc. #163) and Defendant Campbell's Motion for Summary Judgment (Doc. #166) be **DENIED**.

**II.  REPORT**

  **A.  Procedural History**

Much of this case's procedural history was described in the Court's October 11, 2011,

December 2, 2011, January 10, 2012, and June 13, 2012 opinions and orders (Docs. #97, 105, 110, 123). However, facts relevant to the pending motions will be reiterated herein.

*1.    Background*

Plaintiff Darrell Siggers is currently confined at Muskegon Correctional Facility in Muskegon, Michigan. On June 11, 2007, Siggers filed a *pro se* prisoner civil rights complaint against Defendants Patricia Caruso, Andrew Jackson, Ellen Campbell, and Norman Minton. (Doc. #1). Siggers alleges violations of his First Amendment rights to free speech and to be free from retaliation for filing a prior lawsuit (on which he prevailed), as well as violations of the Fair and Just Treatment Clause of the Michigan Constitution. (Doc. #1 at ¶¶47-51).

On October 22, 2008, Siggers filed an amended complaint against Campbell, Jackson, and Minton. (Doc. #43). On August 26, 2008, the magistrate judge then assigned to the case issued a report and recommendation to grant in part and deny in part a motion to dismiss filed by the Defendants. (Doc. #31). On December 10, 2008, the district court issued an opinion and order accepting in part and rejecting in part that recommendation; the district court dismissed all of Siggers' claims except for those against Campbell relating to an incident on September 12, 2006, when she rejected a piece of Siggers' incoming mail.[1] (Doc. #46 at 12). Moreover, the court directed the Clerk of the Court to strike Siggers's amended complaint. (*Id.*).[2]

At that time, Campbell was the sole remaining defendant, and Siggers' sole remaining claim related to Campbell's September 12, 2006 rejection of his legal mail. Additional discovery

---

[1] On September 12, 2006, Campbell rejected mail sent to Siggers by another prisoner on the basis that Siggers did not have a "current, valid legal agreement with this prisoner nor does material meet the criteria of legal property allowed." (Doc. #1 at 32).

[2] On March 11, 2009, the district court entered an opinion and order denying Siggers' motion to alter or amend the judgment and/or for reconsideration. (Doc. #54). That same day, the district court overruled Defendants' objections to the magistrate judge's order vacating the discovery stay and setting the dispositive motion deadline. (Doc. #55).

2

and motion practice took place; Campbell and Siggers filed cross-motions for summary judgment (Docs. #52, 65), and Siggers also filed a motion to delay consideration of Campbell's motion until he had received certain discovery (Doc. #56). Ultimately, on September 25, 2009, the district court granted Campbell's summary judgment motion and dismissed Siggers' complaint in its entirety. (Doc. #71).

        2.     *Sixth Circuit*

Siggers appealed the rulings against him, and on July 27, 2011, the Sixth Circuit issued an opinion affirming the district court's dismissal of all claims against Caruso, Jackson, and Minton, but reversing the grant of summary judgment in favor of Campbell. *See Siggers v. Campbell*, 652 F.3d 681 (6th Cir. 2011). The Sixth Circuit found that the district court had erred in ruling on Campbell's summary judgment motion when Siggers had not yet received discovery materials he had requested and was entitled to receive:

> It was an abuse of discretion for the district court to deny [Siggers' motion for reconsideration], given that Siggers has never received a response to his discovery request, and in light of the obvious relevance of this discovery and the potential for it to aid his opposition to summary judgment.
>
>                  \*      \*      \*
>
> Siggers identified the discovery he sought with sufficient specificity. . . . [T]hese materials have obvious potential to provide information on which Siggers could rely in opposing summary judgment. Siggers has sought discovery from Campbell (and others) since 2007, and he has not been dilatory. The hearing reports requested may bring to light evidence regarding the motivations behind Campbell's actions. . . . Finally, as mentioned, the defendants do not appear to have otherwise been responsive to any of Siggers's discovery requests.

*Id.* at 697 (internal citations omitted). The case was remanded to the district court.

        3.     *Campbell's Second Motion for Summary Judgment*

After remand, the parties engaged in further discovery and, on February 15, 2012,

3

Campbell filed a second motion for summary judgment as to Siggers' only remaining claim – for First Amendment retaliation arising out of her rejection of his legal mail on September 12, 2006. (Doc. #115). On June 12, 2012, this Court issued a report and recommendation, in which it recommended that Campbell's motion be denied without prejudice. (Doc. #123). Specifically, the Court indicated that summary judgment was inappropriate with respect to the third element of Siggers' First Amendment retaliation claim – namely, whether there was evidence of a causal connection between Siggers' alleged protected activity and any adverse action he suffered – because Siggers still had not received responses to the discovery requests he had issued years earlier, and which the Sixth Circuit had ordered be provided. (*Id.* at 8-10). Both Siggers and Campbell filed objections to this Court's report and recommendation (Docs. #125, 127), but, on September 14, 2012, the district court issued an order adopting the report and recommendation and denying without prejudice Campbell's second motion for summary judgment (Doc. #129).

### 4. *Subsequent Proceedings*

On the same date this Court issued its report and recommendation on Campbell's motion for summary judgment, it also issued an order granting in part Siggers' motion for appointment of counsel. (Doc. #122). In that order, the Court specified that counsel would be appointed to represent Siggers for the limited purpose of assisting him in obtaining the discovery that had been requested (specifically, certain e-mails that he had requested but which had not been adequately searched for or produced by Campbell). (*Id.* at 17-18). Consequently, on December 5, 2012, this Court entered an order assigning two attorneys to represent Siggers' interests, on a *pro bono* basis, for that limited purpose. (Doc. #130).

Over the course of the next few months, counsel for the parties worked through certain discovery-related issues. On July 11, 2013, this Court entered an order granting in part and

denying in part a motion to compel discovery filed on Siggers' behalf by his *pro bono* attorneys. (Doc. #144). In that order, Campbell was directed to conduct certain email searches and produce the resultant emails. (*Id.* at 2). In addition, the Court ruled that Siggers was entitled to take three depositions, but specified that he would have to do so himself, as counsel had been appointed for the sole purpose of obtaining electronic discovery, not to assist Siggers in "prosecuting the merits of his case." (*Id.* at 3). Following the completion of this portion of the discovery process, Siggers and Campbell filed cross-motions for summary judgment. (Docs. #163, 166). These motions are fully briefed and ready for consideration.

### B. Standard of Review

When reviewing cross-motions for summary judgment, the court must assess each motion on its own merits. *See Federal Ins. Co. v. Hartford Steam Boiler Inspection & Ins. Co.*, 415 F.3d 487, 493 (6th Cir. 2005). Federal Rule of Civil Procedure 56 provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

When the party without the burden of proof (generally the defendant) seeks summary judgment, that party bears the initial burden of informing the court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine

5

dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (quoting *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989)). Indeed, "'[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'" *Id.* (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)). "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Id.* at 560 (citing *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

A moving party with the burden of proof (typically the plaintiff) faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). As set forth above, the moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden – the plaintiff on a claim for relief or the defendant on an affirmative defense – his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (internal citations omitted). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Harris v. Kowalski*,

2006 WL 1313863, at *3 (W.D. Mich. May 12, 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999)).

    **C.**    **Analysis**

    *1.*    *Facts Relevant to Siggers' First Amendment Retaliation Claim*

As noted above, the sole remaining claim in Siggers' lawsuit relates to Campbell's September 12, 2006 rejection of mail sent to him by another prisoner, Carnell Bates.[3] The mail in question apparently was a legal brief filed in connection with a case that concerned Bates (the "Bates brief"), but which Siggers claims could have aided him (Siggers) in the defense of his own criminal case. (Doc. #114-2 at 27-29). Campbell purportedly rejected this mail pursuant to a Michigan Department of Corrections ("MDOC") Policy Directive ("PD"), which provided, in relevant part, that prisoners "shall be permitted to possess legal property," and defined "legal property" to include materials "necessary to a prisoner's pending litigation, or reasonably necessary to another prisoner's pending litigation provided there is a current, valid agreement for legal assistance with the other prisoner …." PD 04.07.112(M)(1) (effective Nov. 12, 2004). Her rejection was based on the fact that Siggers did not have a "current, valid legal agreement with this prisoner, nor [did the] material meet the criteria of legal property allowed." (Doc. #1 at 32).

Siggers wrote to Campbell shortly thereafter, contending that the Bates brief was permissible correspondence pursuant to the "Stapleton Memorandum." (*Id.* at 22). This memorandum, dated October 24, 2002, and addressed to all MDOC wardens, was an attempt to clarify the version of PD 04.07.112(M) in effect at the time, and provided in relevant part:

    As a result of recent developments in the *Cain* case, clarification has been

---

[3] On October 24, 2013, Siggers filed a Motion for Leave to Supplement Complaint. (Doc. #162). In that motion, Siggers seeks to reinstate a claim against Norman Minton (who previously was dismissed from this lawsuit) and add a claim against Shane Jackson. (*Id.*). This motion is addressed in a separate Opinion and Order. (Doc. #182).

7

> requested as to when a prisoner can receive through the mail motions, briefs, pleadings and similar legal documents in which another prisoner is identified as a party. Please advise mail room staff and other appropriate staff at your facility that such items fall within the definition of "legal property" contained within PD 04.07.112 "Prisoner Personal Property." These documents, if received in the mail for a prisoner at your facility, cannot be rejected solely on the basis that another prisoner is identified as a party. This is true even if there is no authorized legal assistance agreement between the prisoners involved. There must be other clear proof that the documents violate Department policy.
>
> Motions, briefs, pleadings, and similar legal documents in which another prisoner is identified as a party may not be allowed through the mail if it is apparent and can be established that they are being provided in order to circumvent the requirement that the prisoners have a current and valid legal assistance agreement. For example, an accompanying letter indicating that there is a charge for preparing the document would violate PD 05.03.116…

(*Id.* at 21). Campbell responded that she rejected the mail "based on PD 04.07.112 Effective <u>11-15-04.</u> This [the Stapleton] memo is from 2002 and does not supercede [sic] this policy." (*Id.* at 22) (emphasis in original). Siggers filed a grievance challenging the rejection of his legal mail which was denied at each step of the process. As a result, Siggers filed this lawsuit pursuant to 42 U.S.C. §1983, alleging that Campbell rejected this mail in retaliation for his filing and successful pursuit of a prior lawsuit against Campbell's co-worker, David Barlow.

### 2. *The Applicable Legal Framework*

Under Sixth Circuit law, to establish a claim for First Amendment retaliation, the plaintiff must show that: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between the protected conduct and the adverse action – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Circumstantial evidence, like the timing of events or the disparate treatment of similar individuals may, by inference, support the

required showing of a causal link. *See Arnett*, 281 F.3d at 560-61. However, the circumstantial evidence must do more than create speculation as to the required showing. *See Alexander*, 576 F.3d at 558. If Siggers raises a material question of fact as to whether his protected conduct was at least a motivating factor behind any harm, the burden of production shifts to Campbell. *Id.* at 561. If she can "show that [s]he would have taken the same action in the absence of the protected activity," she should prevail on summary judgment. *Thaddeus-X*, 175 F.3d at 399.

In its June 13, 2012 report and recommendation, this Court concluded that Siggers' filing and successful pursuit of his prior lawsuit against Campbell's co-worker, David Barlow, was constitutionally protected activity. (Doc. #123 at 7-8). In addition, the Court noted that Campbell appeared to concede that her rejection of Siggers' mail on September 12, 2006 constituted an adverse action for purposes of a First Amendment retaliation claim. (*Id.* at 7, n.5). Campbell has not challenged these conclusions. Thus, Siggers has satisfied the first and second elements of a First Amendment retaliation claim. The issue now is whether Siggers has established a causal connection between the protected activity and the adverse action.

### 3. *Summary Judgment is Inappropriate on the Causal Link Issue*

Campbell argues that Siggers cannot establish a causal link because "he has no proof that his jury verdict against Barlow had anything to do with her mail rejection on September 12, 2006." (Doc. #166 at 9-10). Campbell testified at her deposition that she did not know of the Barlow lawsuit prior to the time she was served with Siggers' complaint in this case. (Doc. #115-4 at 4). And, according to Campbell, Siggers "admitted that he has no direct knowledge that Campbell had any knowledge of the lawsuit against Barlow."[4] (Doc. #166 at 10 (citing Doc.

---

[4] A review of the cited portion of Siggers' deposition, however, does not exactly reveal such an admission. Rather, Siggers admitted only that no one ever came to him and told him that Campbell knew about his prior lawsuit. (Doc. #115-3 at 4).

#115-3 at 4)). Campbell also relies on Siggers' admission that he had never even spoken with Campbell prior to the day of her first deposition (December 29, 2011), and that their only contact prior to that date had been through written correspondence. (*Id.* at 10 (citing Doc. #115-3 at 3)). Campbell characterizes Siggers' claim that she must have known about the Barlow lawsuit as "sheer speculation" that is insufficient to survive summary judgment. (*Id.* at 10).

In opposition, having finally received documents responsive to his 2007 discovery requests, Siggers points to several documents, including: (1) an October 20, 2005 memo requesting permission to open Siggers' outgoing mail; (2) a September 22, 2006 letter that was rejected by Campbell and that mentioned the Barlow lawsuit; (3) a September 12, 2007 affidavit of Richard Zavodsky, who stated his belief that Siggers' outgoing letters were being opened by MDOC mailroom staff; and (4) a December 19, 2007 letter from attorney Jennifer Biever, who suggested the same thing. (Doc. #163). Campbell argues that none of these documents, standing alone, conclusively establishes that she had knowledge of the Barlow lawsuit at the relevant time, and that may be true. Regardless, however, the Court finds that, taking all of these documents together and considering all of the other evidence presented in this case, a genuine issue of material fact exists as to whether Campbell had knowledge of the Barlow lawsuit at the time of the September 12, 2006 mail rejection.

Campbell admitted that, prior to the time the Sixth Circuit issued its decision in the Barlow case (on June 24, 2005), she had never rejected any of Siggers' mail. (Doc. #114-2 at 22). Shortly thereafter, however, this changed. In support of his claim, Siggers points to an October 20, 2005 memo from Inspector Shane Jackson to Deputy Warden Scott Nobles (the "Jackson memo"), which – for some unexplained reason – was not produced to Siggers until August of 2013. (Doc. #163 at 10). In the Jackson Memo, Jackson inserted Siggers' name and

prison identification number into a pre-printed form, requesting permission to open Siggers' outgoing mail because of a belief that Siggers "may be involved in illegal activities," such as "the smuggling of contraband into the facility." (*Id.* at 17). According to Siggers, there was no basis to suspect that he was engaged in illegal activities, and this memo constitutes evidence that he was being retaliated against because of the Barlow lawsuit. (*Id.* at 10-11).

In response, Campbell argues that the Jackson Memo does not show that she had knowledge of the Barlow lawsuit: she did not draft the memo, it was not addressed to her, and there is no indication that she had anything to do with its creation. (Doc. #166 at 11). Additionally, Campbell points out that although Siggers now asserts that there is no evidence he "was involved in any type of smuggling contraband into the facility," a Hearing Officer found him guilty of possessing forged documents on November 18, 2005, for documents dated October 31, 2005. (*Id.* (citing Doc. #158-3)). Lastly, Campbell asserts that from a temporal perspective, the Jackson Memo does not provide a causal link between Siggers' protected activity and the rejection of his mail nearly one year later, on September 12, 2006. (*Id.*).

The Court agrees that, standing alone, the Jackson Memo does not establish that Campbell had notice of the Barlow lawsuit at the time she issued the September 12, 2006 mail rejection. However, the memo does establish that permission was granted to open Siggers' outgoing mail, beginning on October 20, 2005. And, as one of only two mailroom clerks at the Mound facility, it stands to reason that Campbell would have played a role in screening Siggers' outgoing mail (as well as his incoming mail), a fact that Campbell has not denied. Indeed, when Campbell finally produced the Jackson Memo (some six years after the instant lawsuit was filed), she indicated that it was part of her own personal file. (Doc. #180 at 56).

In addition, Siggers has presented other circumstantial evidence suggesting that, at least

11

as of November 2005, Campbell knew of the Barlow lawsuit, including:

- A November 25, 2005 letter from Siggers to Richard Zavodsky, which specifically referenced Siggers' "civil lawsuit pending against [his] former counselor David Barlow." (Doc. #174 at 21). In addition, Siggers submitted an affidavit from Richard Zavodsky (dated September 12, 2007), in which Zavodsky states that "several" letters he received from Siggers "had been opened prior to delivery." (Doc. #163 at 12 (citing Doc. #114-1 at 15)). In his affidavit, Zavodsky also states his "belief" that these letters "were opened by the mailroom staff at the Mound Facility, in an effort to monitor our communication." (Doc. #114-1 at 15).

- November 19 and 21, 2005 letters to Siggers from attorneys Jennifer Morris (Biever) and Paul Reingold. (Doc. #174 at 17-18). Both of these letters specifically reference having received letters from Siggers regarding his civil case against Barlow. (*Id.*).

- Affidavits from Carnell and Darnell Bates, twin brothers who exchanged correspondence with Siggers while all three were in prison. (Doc. #174 at 14-15; Doc. #177). Both Bates brothers state that, during the week of November 19, 2005, Siggers sent them copies of a Detroit Free Press article that referenced his $219,000 verdict in "a civil case he filed against a MDOC staff member David Barlow." (*Id.*).

Taken together, all of these facts suggest that: (1) beginning on October 20, 2005, Siggers' outgoing mail was being opened; and (2) in November of 2005, Siggers sent and received correspondence to and from several individuals regarding his civil case against David Barlow. These facts, then, constitute strong circumstantial evidence that Campbell – who played a key role in screening Siggers' mail – knew about the Barlow lawsuit at least as early as October or November of 2005.

As further evidence that Campbell knew of the Barlow lawsuit prior to 2007 (as she claimed at her deposition), Siggers points to a letter sent to him by prisoner David Scott, dated September 22, 2006, which was rejected by Campbell on September 29, 2006. (Doc. #163 at 14 (citing Doc. #114-1 at 1, 18)). In the first paragraph of that letter, Scott specifically mentioned Siggers' lawsuit against Barlow, saying, "Like many others, I am impressed with your victory over the MDOC in your retaliation case. I believe the amount awarded you may be

12

unprecedented for a retaliation claim and you certainly deserve being highly commended." (Doc. #114-1 at 18). Campbell issued a rejection notice, indicating that Siggers had received mail from Scott containing the following: "116 PAGES DEFENDANT'S MOTION/SENT 3RD PARTY REQUESTING ASSISTANCE." (*Id.* at 1). Siggers argues that Campbell could not have known that Scott was requesting legal assistance without reading the contents of this letter, which began with the above-quoted reference to Siggers' "victory over the MDOC." (Doc. #163 at 14).

In response, Campbell asserts that even assuming this is true, a letter dated September 22, 2006 (and rejected by Campbell on September 29, 2006) does not establish that she had knowledge of Siggers' prior lawsuit against Barlow *at the time she rejected his mail on September 12, 2006.* (Doc. #166 at 12). Even if she is correct, however, that does not end the inquiry. Siggers offers these documents not as evidence that Campbell necessarily knew about the Barlow lawsuit on September 12, 2006, but, instead, as evidence that Campbell's deposition testimony that she did not know about the Barlow lawsuit until ***after she was served with Siggers' complaint*** in the instant case[5] was not truthful. Specifically, Siggers asserts:

> Campbell testified at her deposition that she did not become aware of Siggers' prior lawsuit against her co-worker Barlow until he filed his current lawsuit against her in 2007. Since Campbell wrote on her 9/29/06 rejection notice of Mr. Scott's letter to Siggers that he was 'requesting assistance,' we know she read it. Therefore her claim that she did not become aware of Siggers' prior lawsuit until 2007, is untrue.

(Doc. #174 at 7-8) (internal citations omitted). Siggers' argument on this issue is certainly plausible, if not persuasive.

It is true that Campbell testified at her deposition that she had no knowledge of Siggers'

---

[5] Specifically, in response to Siggers' questions, Campbell testified, "So, no. I did not know of your [Siggers'] lawsuit with Mr. Barlow until after I got your [Siggers'] lawsuit to me and the other defendants. Did not know about it." (Doc. #115-4 at 4).

lawsuit prior to the time she was served with his complaint in this case. (Doc. #115-4 at 4). However, given the fact that Campbell specifically referenced the contents of Scott's September 22, 2006 letter when she issued the September 29, 2006 rejection notice, a jury could easily infer that she had, prior to that time, read about Siggers' "victory over the MDOC in [his] retaliation case" (the very first sentence in the letter). (Doc. #114-1 at 18). This fact, in addition to the 2005 documents discussed above – which provide evidence that Siggers' mail, some of which clearly referenced his lawsuit against Barlow, was being opened and read – raises credibility questions that only a jury may properly decide.

For all of these reasons, the Court concludes that there is a genuine issue of material fact as to whether Campbell knew of the Barlow lawsuit at the time she rejected Siggers' mail on September 12, 2006, and, thus, whether this adverse action was motivated at least in part by Siggers' protected activity.

Campbell also argues that she is entitled to summary judgment because she has established that she would have taken the same action (i.e., rejected Siggers' mail on September 12, 2006) in the absence of Siggers' protected activity. (Doc. #166 at 13-14). Specifically, Campbell asserts that she rejected Siggers' mail because she believed he was trying to circumvent the legal assistance policy by doing legal work for prisoners in the absence of a legal assistance agreement. (Doc. #115-4 at 3-4). As this Court indicated in its prior report and recommendation, however, Campbell has offered shifting justifications for her actions. (Doc. #123 at 10, n.8). For example, at one point in her deposition, she claimed to have rejected the mail pursuant to the Stapleton Memo's second paragraph (allowing mail to be rejected where a prisoner is attempting to "circumvent the requirement that the prisoners have a current and valid legal assistance agreement"). (Doc. #114-2 at 30-31; Doc. #114-3 at 16). However, at other

14

points in her deposition, Campbell claimed she rejected the mail in question pursuant to then-existing PD 04.07.112(M), claiming that it superseded the Stapleton Memo. (Doc. #114-2 at 29, 32). Because there are inherent inconsistencies in Campbell's own testimony on this issue, and because of the credibility questions discussed above, the Court cannot conclude that Campbell would have taken the action in question if Siggers had not engaged in protected activity.

For the same reasons, however, summary judgment in Siggers' favor should be denied. As set forth above, because Siggers is the plaintiff in this case, he must make a showing "sufficient for the court to hold that no reasonable trier of fact could find other than for [him]." *Calderone*, 799 F.2d at 259. Here, where the evidence is subject to different interpretations, and where there are credibility issues and questions of fact to be resolved by a jury, summary judgment in Siggers' favor is inappropriate.

### III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that both Plaintiff's Motion for Summary Judgment (Doc. #163) and Defendant Campbell's Motion for Summary Judgment (Doc. #166) be **DENIED**.

Dated: March 17, 2014                          s/ David R. Grand
                                               DAVID R. GRAND
                                               UNITED STATES MAGISTRATE JUDGE


### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431

F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 17, 2014.

s/Felicia M. Moses  
FELICIA M. MOSES  
Case Manager