UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRELL SIGGERS, #176859,

                            Plaintiff,          Civil Action No. 07-12495
                                                Honorable Marianne O. Battani
            v.                                  Magistrate Judge David R. Grand

ELLEN M. CAMPBELL, *et al.*,

                            Defendants.
_____/

## OPINION AND ORDER DENYING PLAINTIFF'S
## MOTIONS FOR CONTEMPT AND/OR SANCTIONS [145, 146, 147]

Before the Court are *pro se* Plaintiff Darrell Siggers' motions for contempt and/or sanctions against Defendant Ellen Campbell, her attorney, John Thurber, and witness Shane Jackson, filed on September 9, 2013 (Docs. #145, 146, 147).[1] A response was filed to these motions on October 7, 2013, (Docs. #158), and Siggers filed a reply on October 17, 2013 (Doc. #160). An Order of Reference for General Case Management was entered on January 5, 2012, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. §636(b). (Doc. #109).

Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* E.D. Mich. L.R. 7.1(f). Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record and declines to order a hearing at this time.

### A.      Background

This case's substantial procedural history was described in the Court's October 11, 2011,

_____

[1] Plaintiff filed three related motions on this date: a one-page "Motion to Show Cause Why Defendant Ellen Campbell, Defendant's Attorney John Thurber, and Witness Shane Jackson Should not be Held in Contempt and/or Sanctioned" (Doc. #145); a three-page "Motion to Hold in Contempt Defendant Ellen Campbell, Defendant's Attorney John Thurber, and Witness Shane Jackson" (Doc. #146); and a lengthy "Motion for Sanctions Against Defendant Ellen Campbell, Defendant's Attorney John Thurber, and Witness Shane Jackson" (Doc. #147). Because these motions contain related allegations, they will be discussed together.

December 2, 2011, and January 10, 2012 opinions and orders (Docs. #97, 105, 110), as well as its June 13, 2012 and March 17, 2014 reports and recommendations (Docs. #123, 183). Additional facts relevant to the determination of the pending motions will be reiterated herein.

Plaintiff Darrell Siggers is currently confined at Muskegon Correctional Facility in Muskegon, Michigan. On June 11, 2007, Siggers filed a *pro se* prisoner civil rights complaint against Defendants Patricia Caruso, Andrew Jackson, Ellen Campbell, and Norman Minton, alleging, in relevant part, First Amendment retaliation. (Doc. #1). On July 27, 2011, the Sixth Circuit issued an opinion affirming the district court's dismissal of all claims against Caruso, Andrew Jackson, and Minton, but reversing the grant of summary judgment in favor of Campbell and remanding for further proceedings. *See Siggers v. Campbell*, 652 F.3d 681 (6th Cir. 2011). The Sixth Circuit found that Campbell's summary judgment motion should not have been granted when Siggers had not yet received discovery materials he had requested that had "obvious relevance" to his claims against Campbell. *Id.* at 697 (internal citations omitted).

After remand, the only remaining claim is Siggers' First Amendment retaliation claim against Campbell, arising out of her rejection of his legal mail on September 12, 2006. The parties engaged in additional discovery after the Sixth Circuit's decision and, on February 15, 2012, Campbell filed a second motion for summary judgment. (Doc. #115). On June 12, 2012, this Court issued a report and recommendation, in which it recommended that Campbell's motion be denied without prejudice. (Doc. #123). Specifically, the Court indicated that summary judgment was inappropriate with respect to the third element of Siggers' First Amendment retaliation claim – namely, whether there was evidence of a causal connection between Siggers' alleged protected activity and any adverse action he suffered – because Siggers still had not received responses to the discovery requests he had issued years earlier, and which

the Sixth Circuit had ordered be provided. (*Id.* at 8-10). The district court adopted the report and recommendation on September 14, 2012. (Doc. #129).

On the same date this Court issued its report and recommendation on Campbell's motion for summary judgment, it also issued an order granting in part Siggers' motion for appointment of counsel. (Doc. #122). In that order, the Court specified that counsel would be appointed to represent Siggers for the limited purpose of assisting him in obtaining the discovery that had been requested (specifically, certain e-mails that he had requested but which had not been adequately searched for or produced by Campbell). (*Id.* at 17-18).

Over the course of the following months, counsel for the parties worked through certain discovery-related issues. On July 11, 2013, this Court entered an order granting in part and denying in part a motion to compel discovery filed on Siggers' behalf by his *pro bono* attorneys. (Doc. #144). In that order, Campbell was directed to conduct certain email searches and produce the resultant emails. (*Id.* at 2). In addition, the Court ruled that Siggers was entitled to take three depositions, but specified that he would have to do so himself, as counsel had been appointed for the sole purpose of obtaining electronic discovery, not assisting Siggers in "prosecuting the merits of his case." (*Id.* at 3).

On August 21, 2013, Siggers deposed Campbell for the second time in this action. At that deposition, Campbell produced – for the first time – an October 20, 2005 memo from Inspector Shane Jackson to Deputy Warden Scott Nobles (the "Jackson Memo"). (Doc. #147 at 20). In the Jackson Memo, Jackson inserted Siggers' name and prison identification number into a pre-printed form, requesting permission to open Siggers' outgoing mail because of a belief that he "may be involved in illegal activities," such as "the smuggling of contraband into the facility." (*Id.*). Campbell testified that she had given this memo to her attorney for production to

Siggers, and she could not explain why he had not previously received it. (Doc. #180 at 56-58). Campbell's attorney, John Thurber, indicated that the document had not been deliberately withheld, saying that it could have been a simple "copying error" that resulted in its omission from production. (*Id.* at 58-59).

Two days later, on August 23, 2013, Siggers deposed Shane Jackson. Siggers asserts in his motion that the conduct of both Jackson and Attorney Thurber at this deposition warrants sanctions. (Doc. #147). Specifically, Siggers takes issue with Jackson's "recalcitrant, vexatious, intimidating and evasive responses and non-responses" to his questions, saying that he was left with no choice but to abruptly terminate Jackson's deposition. (*Id.* at 8-13). In addition, Siggers asserts that Attorney Thurber's actions – in speaking out at these two depositions and in failing to advise Jackson that he should not talk to Campbell between their depositions – warrant the issuance of sanctions.

### B. Analysis

#### 1. The Applicable Legal Standard

In his motions, Siggers seeks sanctions against Campbell, Jackson, and Attorney Thurber pursuant to FRCP 37(b)(2) for their alleged failure to comply with this Court's prior orders directing the production of responsive documents and directing Campbell's and Jackson's attendance at depositions. (Doc. #147). Rule 37(b)(2) sets forth a wide array of sanctions that a court may impose for such failure, including an order prohibiting the disobedient party from introducing designated matters into evidence, an order striking pleadings, and an order holding the recalcitrant party in contempt.[2] The Court has broad discretion to order one or more "just"

---

[2] To justify a civil contempt finding, the movant must prove by clear and convincing evidence that the respondent "violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Glover v. Johnson*, 934 F.2d 703, 707 (6th Cir. 1991) (*quoting NLRB v. Cincinnati Bronze, Inc.*, 829

sanctions, as provided for in Rule 37; thus, it can tailor the imposition of sanctions to the facts of a particular case. *See* FRCP 37(b)(2); *Regional Refuse Sys. v. Inland Reclamation Co.*, 842 F.2d 150, 153 (6th Cir. 1988). Rule 37(b)(2)(C) further provides that, instead of or in addition to these sanctions, the court "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."

### 2. *Production of the Jackson Memo*

In Siggers' motions, he seeks sanctions against Campbell and Attorney Thurber pursuant to FRCP 37(b)(2) for failing to produce the Jackson Memo prior to August 21, 2013. (Doc. #147 at 3-6). Siggers is correct that both the Sixth Circuit and this Court have issued discovery orders requiring Campbell to produce all documents responsive to Siggers' discovery requests (Docs. #84, 105, 144), and there is no dispute that the Jackson Memo was, in fact, responsive. However, Campbell asserts that her failure to produce this one-page memo prior to August of 2013 was simply inadvertent. Specifically, Campbell and her attorney indicate that the Jackson Memo was contained in her file, which she turned over to her attorney for production to Siggers. (Doc. #180 at 56-58). They further explain:

> Counsel discussed this matter at length with Campbell. Counsel cannot locate the original set of documents that Campbell provided to him in November 2011. There was no reason for Campbell or her Counsel to withhold the October 20, 2005 memo since it has no relevance whatsoever to the remaining claim in this case. The only explanation that Counsel has is that it got missed in the copying process. Siggers accuses Campbell and her Counsel of sanctionable misconduct with absolutely no proof.

(Doc. #158 at 5).

The Court agrees that Siggers has not established that the failure to produce the Jackson Memo was anything other than inadvertent. Although Siggers asserts that Campbell and

F.2d 585, 590 (6th Cir. 1987)).

Attorney Thurber "chose to withhold [this document] for [] strategic reasons" (Doc. #160 at 5), Siggers has offered no *proof* that this was the case. And, Campbell's and Thurber's explanation for the document's untimely production is not implausible. While the Court disagrees with Campbell's assertion that the Jackson Memo "is totally irrelevant to this case" (Doc. #158 at 8), there is no evidence that Campbell and/or Attorney Thurber deliberately failed to produce this document or obey a court order. And, although Siggers claims he was severely prejudiced by Campbell's failure to timely produce this document (Doc. #160 at 8), the Court cannot agree. Siggers was able to utilize the Jackson Memo in responding to Campbell's motion for summary judgment, which this Court has recommended should be denied. (Doc. #183). For all of these reasons, the Court will not award sanctions, or find Campbell or Attorney Thurber in contempt, for their belated production of the Jackson Memo.

### 3. Attorney Thurber's Alleged Actions

Siggers also argues that the Court should award discovery sanctions against Attorney Thurber for (a) failing to "advise Jackson that it was improper to communicate with Campbell immediately prior to his deposition," and (b) using an "unprofessional and demeaning tone and attitude" toward Siggers and speaking (other than to voice objections) during both Campbell's and Jackson's depositions. (Docs. #147, 160).

As an initial matter, Attorney Thurber was not required to advise Jackson to refrain from communicating with Campbell prior to his deposition. At Jackson's deposition, Attorney Thurber voiced his belief that "witnesses can speak to one another" before and/or after their depositions, saying, "There's no rule that prohibits that that I'm aware of." (Doc. #180 at 73). The Court agrees. There is nothing in the Federal Rules of Civil Procedure that would prohibit two witnesses from speaking to each other, and the Court has not issued an order to the contrary.

While it certainly might be prudent for an attorney to advise his client not to speak to witnesses about the substance of their testimony prior to their depositions, this is only because the substance of such communications is generally discoverable. In other words, Siggers could – and, in fact, did – question Jackson regarding the contents of his and Campbell's discussions. (Doc. #180 at 73-76). Thus, Attorney Thurber did not act inappropriately in failing to advise these witnesses that they were not permitted to speak with each other between their depositions.

Siggers also asserts that Attorney Thurber "unlawfully disrupted his depositions" by failing inform Jackson that he was required to answer Siggers' questions in "an appropriate manner" and by otherwise using a demeaning and unprofessional tone. (Doc. #147 at 15). In support of his argument that Attorney Thurber should be sanctioned for this conduct, Siggers relies on FRCP 30(c)(2), which provides, in part: "[a]n objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."

The Court has reviewed the entirety of both Campbell's and Jackson's August 2013 depositions (Doc. #180) and is not persuaded that Attorney Thurber acted inappropriately. First, the Court notes that very early on in Jackson's deposition, Siggers directed a specific factual question to Attorney Thurber, and Attorney Thurber, though not required to do so, answered him. (Doc. #180 at 71-72). Actively engaging Attorney Thurber in this manner belies Siggers' instant argument that he acted inappropriately during the deposition. Moreover, it appears that this aspect of Siggers' motion is based on his misconception that because it is "his" deposition, Attorney Thurber was not permitted to question the witnesses or otherwise participate. This is not the case. *See* FRCP 30(c)(1) ("The examination and cross-examination of a deponent

proceed as they would at trial…."). And, although it is admittedly difficult to gauge "tone" and "attitude" from a deposition transcript, it certainly appears that Attorney Thurber maintained an appropriate degree of professionalism at all times. Thus, there simply is no basis to award sanctions for Attorney Thurber's conduct during these depositions.

### 4. Shane Jackson's Conduct During His Deposition

Siggers also argues that Shane Jackson should be sanctioned for his "evasive and non-responsive" answers to deposition questions. (Doc. #147 at 8-13). Specifically, Siggers asserts that Jackson repeatedly answered questions with "I don't know" or "I don't remember" or "maybe" or "possibly." (*Id.* at 10). The Court has read the entire transcript of Jackson's deposition and agrees that it makes him appear less forthcoming than one would expect, particularly with respect to recent events and matters personal to himself.[3] However, many of the events about which Siggers questioned Jackson took place almost a decade ago, and it is to be expected that Jackson's memory would fade over such a lengthy period of time and that he might not remember the details of a single memo he issued in 2005, for example. Siggers offers no proof that any of Jackson's testimony was untruthful; rather, it simply appears that Siggers was not satisfied with Jackson's inability to recall precise details of incidents that occurred many years ago. That is not enough to merit the imposition of sanctions. To the extent Jackson professed an inability to recall more recent events or to expound on prior answers he had given, that may certainly be a matter the jury can consider when weighing his credibility, but it is not

---

[3] For example, when asked about the "substance" of a conversation he had only two days prior with Campbell, Jackson initially testified "I do not recall." (Doc. #180 at 73). He did, however, later testify that the conversation consisted of "[g]eneral pleasantries…things of that nature." (*Id.* at 75). And, when asked whether he had ever been charged with any form of misconduct as an MDOC employee, Jackson testified, "I don't recall." (*Id.* at 82). Finally, after Jackson testified that mail room personnel could assist him in "various ways" with investigating a prisoner's outgoing mail, Siggers asked him to "[g]ive me an example," to which Jackson answered, "Can't think of one." (*Id.* at 84).

itself a ground for any relief at this juncture. Thus, the Court is not persuaded that Jackson should be sanctioned.

### C. Conclusion

For the reasons set forth above, Plaintiff's motions for contempt and/or sanctions against Defendant Ellen Campbell, her attorney, John Thurber, and witness Shane Jackson (Docs. #145, 146, 147) are **DENIED**.

Dated: March 21, 2014         s/ David R. Grand
                                                DAVID R. GRAND
                                                UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES REGARDING OBJECTIONS

The parties' attention is drawn to Fed. R. Civ. P. 72(a), which provides a period of fourteen (14) days from the date of receipt of a copy of this order within which to file objections for consideration by the district judge under 28 U.S. C. §636(b)(1).

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 21, 2014.

                                        s/Felicia M. Moses
                                        FELICIA M. MOSES
                                        Case Manager